Watkin G. Powell and Patrick Clark, Administrators of
the Estate of Wm. Gibson, deceased, Appellants, *v.*
Charles M. Derickson and G. M. Derickson, Executors
of the Estate of D. V. Derickson, deceased, impleaded
with Cyrus Kitchen and others, doing business as the
Meadville Savings Bank.

*Evidence—Competency of witness as to undisputed facts not material—
Review.*

Where specific matters proposed to be shown by a witness who is held
to be incompetent by the trial court, are established by admittedly compe-
tent testimony, and are not disputed, the question of the competency of
the witness is immaterial, and on appeal the Supreme Court will not con-
sider the question.

*Evidence—Competency of witness—Partnership—Bank.*

D. was a member of a partnership conducting a bank from 1877 until
his death in 1891. In 1886 G. deposited with the bank a large sum of
money, and received a certificate of deposit therefor. He died intestate
in 1887. In 1890 a partial payment was made upon the certificate and
G.'s administrators accepted a new certificate for the balance. In 1893,
after the death of D., another partial payment was made, and G.'s admini-
trators accepted a new certificate for the balance. In an action by G.'s
administrators against D.'s executors on the certificate, the evidence showed
that D. was a prominent citizen of the city in which G.'s administrators
lived, and was well known to them, and from 1887 until 1893, G.'s admin-
istrators had constant dealing with the partnership. *Held*, (1) that if G.'s
administrators knew that D. was a member of the co-partnership, they
were liable to G.'s estate for a loss occasioned by the substitution of the
certificate of 1893 for that of 1890, and they were therefore interested in
the result of the suit; (2) that from the nature of their transactions with
the partnership and their position as trustees, it might reasonably be in-
ferred that they were not without knowledge respecting the membership
of it, and therefore incompetent to testify to their want of knowledge;
(3) that it was proper to admit evidence of transfers of stock of the bank,
of the introduction of new members and the part they took in the man-
agement of partnership affairs; (4) that the evidence was sufficient to sub-
mit to the jury to determine whether G.'s administrators knew that D. was
a member of the firm.

Argued May 1, 1896.    Appeal, No. 341, Jan. T., 1896, by
plaintiffs, from judgment of C. P. Crawford Co., Feb. T., 1894,
No. 175, on verdict for defendants.    Before GREEN, WILLIAMS,
MCCOLLUM, DEAN and FELL, JJ.    Affirmed.

Assumpsit on certificate of deposit.  Before CRISWELL, P. J.

At the trial it appeared that in 1867 Cyrus Kitchen and others organized a general copartnership under the name and style of the Meadville Savings Bank for the purpose of carrying on a general banking business in the city of Meadville, Pa., and entered into and signed articles of association therefor, the interests of the members being represented by shares of stock. On January 20, 1877, A. P. Ingraham, one of the shareholders, assigned five shares of the stock to D. V. Derickson, which were duly transferred on the books of the association in accordance with its articles.  These shares were held by him until the 21st day of July, 1891, when he died testate, and letters testamentary upon his estate were issued to C. M. Derickson and G. M. Derickson.  The bank continued to do business until the 13th of January, 1894, when it closed its doors, and on January 20, 1894, made an assignment for the benefit of its creditors. In the meantime, on September 3, 1886, William Gibson deposited in said bank $10,000, receiving therefor a certificate of deposit.  On July 12, 1887, he died intestate, and letters of administration upon his estate were issued to Watkin G. Powell and Patrick Clark.  On July 18, 1890, the bank made a partial payment to Gibson's administrators on his certificate of deposit, and issued another certificate for $6,400, balance due.  This certificate was retained by the administrators until October 10, 1893, more than two years after the death of D. V. Derickson, at which time they sent it by their attorney, Thomas Roddy, to the bank, who received from Cyrus Kitchen, the president, acting for the bank, $1,672, and a new certificate of deposit in the name of the administrators for $5,400.

Other facts appear from the opinion of the Supreme Court.

Cyrus Kitchen was called as a witness for the plaintiffs to prove the transfer book and the minute book of the bank.  The court on objection excluded his testimony on the ground that he was incompetent to testify to matters occurring in the lifetime of D. V. Derickson, and sustained the objections to the admission of the books, granting exceptions and sealing bills for the plaintiffs. [1, 2]

Witness was then shown the certificate of deposit of October 10, 1893, and testified that he was in the bank at the time it was given, and remembered the circumstance of giving it; that

it was given in lieu of a certificate of a former date which was surrendered and canceled, and that no money was paid for it at the time. He was then asked:

"Q. What were these certificates for? A. They were for money, the balance of a $10,000 deposit."

Mr. Mehard, of counsel for defendants, objects. We do not concede 'Squire Kitchen's competency to testify to anything that occurred prior to the death of D. V. Derickson.

Mr. Haskins, of counsel for plaintiffs: I asked him if any money was put in at the time. He says, "No." I ask him if the money was theretofore deposited. I do not now ask when.

Mr. Mehard: Their allegation is that the money which was deposited was deposited in 1886. That is the allegation of their declaration. And 'Squire Kitchen is not competent to testify that it was money theretofore deposited unless it was money deposited since the death of D. V. Derickson.

Mr. Haskins: State whether or not it was for money theretofore in the bank. You need not tell when it was deposited. Was it money that was in the bank after the death of D. V. Derickson and before the date of the issuing of this certificate.

Mr. Mehard objects to 'Squire Kitchen stating anything except what actually occurred since the death of D. V. Derickson.

By the Court: It appearing to be admitted or heretofore proved that the certificate bearing date October 10, 1893, was given in lieu of a certificate, bearing prior date, and it also appearing that the certificate bearing a prior date, and surrendered October 10, 1893, bears date prior to the death of D. V. Derickson, deceased, objection to the question is sustained and the offer overruled. Seal a bill for the plaintiffs. Exception. [3]

W. G. Powell, one of the plaintiffs was asked this question: "You may state whether you knew whether Major Derickson was a member of the bank or not."

Mr. Mehard objects to the witness testifying as to a state of facts existing in the lifetime of Major Derickson.

Mr. Haskins: The objection is probably well taken, that is, if it is conceded—as I understand the court to hold—that he is interested so that he is not a competent witness. But we insist that the witness is not interested in a sense that he cannot testify. Therefore we insist upon the question.

By the Court: We will have to sustain the objection and seal a bill for the plaintiffs. Exception. [4]

Patrick Clark was called and examined by plaintiffs.

Mr. Mehard on cross-examination : I simply want to show his familiarity with Crawford county.

Mr. Haskins : For what purpose?

Mr. Mehard : I will indicate my purpose by asking him now if he was not acquainted with Major Derickson.

Mr. Haskins objects. The object of all this is to ask the jury to infer that these men must have known of the death of D. V. Derickson. That is altogether unimportant and is not relevant, if they did not know that he was a member of the bank, therefore they have no right to go into that.

By the Court: There was no examination in chief reaching back to the time of D. V. Derickson's death.

Mr. Mehard : We wish to know whether he didn't know of the fact of D. V. Derickson's death.

Mr. Haskins : That is not competent. No inference can be drawn from that without he knew at the same time that he was a member of the bank.

By the Court : That is another question. We will allow you to ask whether he knew of his death.

Mr. Haskins asks exception.

By the Court: Seal a bill for the plaintiffs. Exception.

" Q. You heard of Major Derickson's death, did you not? A. I suppose I did."

Mr. Haskins desires to add the further objection that it is also not cross-examination.

By the Court: You asked whether he knew of any changes in the partnership. It might have been followed by another question asking him whether or not he did not know that he was a member of the partnership, but counsel saw proper not to do so. I am not saying now that it would have been competent.

Mr. Haskins : Your honor gives me the exception on the ground that it is not cross-examination also.

By the Court: Yes. Seal a bill for the plaintiffs. Exception. [5]

The court charged in part as follows :

The deliberation with which this trial has proceeded has enabled me to place in writing the greater part of what I shall have to say to you at this time.

In 1867 or 1868 Cyrus Kitchen, A. P. Ingraham and others organized a copartnership under the name and style of the Meadville Savings Bank for the purpose of carrying on a banking business. Articles of association were then prepared and signed by those entering into and becoming members of the partnership. These articles of association, supplemented by the general law governing partnerships, became the law of this association. The business then commenced, continued, it appears, under the terms of the articles of association until the bank failed and closed its doors on the 13th of January, 1894. A copy of these articles of association has been offered in evidence, and you will be permitted to take it with you to your consulting room. Its terms have been stated and referred to so often and so much in your presence that it is unnecessary to recite it at length.

From the evidence it appears that it has remained unchanged, and as provided therein, new shareholders or partners have been taken into the business from time to time, and persons who were partners or shareholders therein have retired from time to time. In January, 1877, Mr. Derickson, defendants' testator here, purchased the interest of Ingraham, consisting of five shares of stock of the par value I believe of $100 each, which interest was transferred to him on the books, and under the terms of the articles of association he was accepted and approved as a member of the copartnership as it then existed. He continued to hold the interest then acquired or gained until his death, the 21st day of July, 1891. The defendants here, C. M. Derickson and G. M. Derickson, it is conceded, are the executors of the last will and testament of Mr. D. V. Derickson, deceased.

While these articles of association were a law to the partners, that is to those signing or assenting thereto, they were not a law in all respects to those dealing or having business transactions with them. While as between themselves, members could retire and new members could be admitted without any change in the partnership or the books, further than to change the names of the owners of the shares therein, as to outsiders, creditors of those parties, every change in the ownership of shares, whether by written assignment thereof or death, worked a dissolution of the partnership as it existed at the time of the

transfer or death; and the business thereafter conducted by the surviving or new members, was a new partnership, composed of persons in part different from those who composed it prior to the transfer or death.   This is true notwithstanding the fact that the name under which they continued to operate remained unchanged from the time of the inception of the business in 1867 to the time of the failure.

This is a general statement of the law applicable to the manner of doing business.   To what extent this general statement of the law may be modified by particular facts we will call your attention hereafter.

In the bank, owned and conducted by the persons then working under these articles of association, the plaintiffs' intestate, Dr. William Gibson, then in life, on the 3d day of September, 1886, deposited funds to the amount of $10,000, taking therefor what is called a certificate of deposit bearing said date and signed by the acting president or agent for the partners, Cyrus Kitchen, which certificate was due and payable in one year with interest at the rate of four per cent per annum.   On October 21, 1887, it appears this certificate issued to Dr. Gibson was surrendered to the bank and a new certificate was issued for $10,400, being the original principal deposited, with one year's interest at four per cent added.   Dr. William Gibson, the original depositor, having died in the meantime, this certificate was issued to W. G. Powell and P. Clark, his administrators, and was due and payable in one year after date with interest at the rate of three and one half per cent per annum, which certificate was also signed by Cyrus Kitchen as president.   Afterwards the bank, or those conducting the business, paid on account of this certificate all interest accrued thereon to July 18, 1890, and $4,000 on account of the principal.   According to my notes the payment of $4,000 on the principal was made on June 6, 1889, and was indorsed as a credit on the back of the certificate then held by the administrators of Gibson.   All of these certificates have been offered in evidence and you will also have the privilege of taking them out and examining them, and their dates, and the indorsements thereon.

On December 11, 1890, the certificate then held by plaintiffs was returned to the bank and a new certificate was issued to them calling for $6,400, with interest from July 18, 1890, signed

by W. R. McCoy, acting as cashier of the bank, and therefore as agent for the parties then doing business. This certificate was payable to the administrators of Gibson with interest at the rate of three and one half per cent per annum on return of the certificate properly indorsed by them.

I call your attention to this certificate for the reason that it is the one last issued prior to the death of Mr. D. V. Derickson, the defendants' testator. From 1877 to this time and to the time of his death he had been and was a member of this partnership, or rather a member of the several partnerships which had been conducting this banking business. He was such a member when the original deposit was made by Gibson in 1886, and when each new certificate was issued, including the one last referred to and dated the 11th of December, 1890.

It is contended by the plaintiffs here, and as I understand it, admitted by the defendants, that D. V. Derickson, deceased, was on the 11th day of December, 1890, liable to the plaintiffs for the amount called for by this certificate, and that he so remained liable until the time of his death; and also that after his death his estate remained liable until the 10th of October, 1893. Having died on the 21st of July, 1891, he could not thereafter himself, of course, remain a member of any partnership. His death severed his connection with the partnership. But it did not release his estate from liability for anything for which he was liable at the time of his death. Therefore if the plaintiffs had retained the certificate bearing date the 11th of December, 1890, and had brought suit upon it, so far as anything has been disclosed by the evidence here the defendants would have had no defense to its payment. Plaintiffs, however, did not retain this certificate. [On the 10th day of October, by their attorney or agent, Mr. Roddy, they sent this certificate to the place where the parties then operating under these articles of association were doing business—and we presume at the old stand—under the name of the Meadville Savings Bank, where Mr. Roddy received from them $1,000 and some interest, surrendered the old certificate dated December 11, 1893, and received a new one for $5,400, with interest from July 18, 1893, signed by Cyrus Kitchen, president, payable as was the last one to the administrators of William Gibson, with interest at three

and one half per cent per annum on return of the certificate properly indorsed by them.

Mr. Kitchen says this certificate was given in lieu of and for the balance due, after deducting payments, on the one dated December 11, 1890. This transaction is the important one in the controversy you are now to determine.] [17] The defendants say that by reason of what then and there took place on the 10th of October, 1893, under the facts in connection with this banking business as they then existed, the estate of D. V. Derickson, deceased, then ceased to be liable to the estate of William Gibson, deceased.

As reason for this contention on the part of the defendants that the estate of D. V. Derickson, deceased, ceased to be liable to the plaintiffs on the 10th day of October, 1893, defendants allege, and they have offered in support of their allegations evidence that there were sundry transfers of shares in this business after the death of D. V. Derickson, July 21, 1891, in consequence of which and the approval of the acting board of directors of the bank the membership was changed, and that by reason of this as well as by reason of the death of Mr. Derickson, under the law the partnership to which Mr. Derickson belonged at the time of his death became dissolved, and that on the 10th of October, 1893, a new and different partnership composed in part of new and different members was then doing business as the Meadville Savings Bank. That ten shares of stock held by some Cussewago Lodge, or some order, I have not the name of it exactly, were transferred to one Stolz, both of which transfers were approved by the board of directors after the death of Mr. Derickson and on January 8, 1892. That on May 20, 1893, fifty-three shares held by Nancy J. Loveridge and others were transferred or surrendered to the bank; that on August 2, 1893, ten shares held by one Beman were transferred to Mr. Kitchen, both of which transfers were approved as required by the articles of association, by the board of directors, the approval of the latter having been given January 20, 1893.

The defendants claim that as to creditors and as to these plaintiffs by reason of the death of Mr. Derickson the partnership existing at the time of and prior to his death became dissolved; that by reason of the subsequent changes in the

membership a new and different partnership resulted. And this we instruct you is the law so far as these plaintiffs are concerned, if they had notice either actual or implied of the facts.

It further appears that the different old certificates issued to William Gibson or to his administrators, all of those certificates in fact, offered in evidence and issued prior to and bearing date of October 10, 1893, were produced here before you by Mr. Kitchen, the late president of this bank, who testified that he procured them in the vault or safe of the bank among the papers or files of the bank. The defendants allege that these certificates were surrendered to the bank for cancelation; and it appears, I believe, by the face of the certificates that they were canceled or stamped paid. That by the surrender and cancelation on October 10, 1893, of the certificate dated December 11, 1890, and the part payment thereof and the issue by the bank, as it then existed, with a new or changed membership, of a new certificate for the balance, and the acceptance of such new certificate by the plaintiffs, ended the liability of the defendants on the old certificate of December 11, 1890; that thereby such old certificate was paid and that thereafter the plaintiffs held, and held only, those bound by the new certificate, that is the partnership as it existed at that time, October 10, 1893. In other words, that there had been what is termed in law a novation, that is a voluntary substitution of a new or different security for the old security. And we say to you as matter of law, if this was done intelligently, with knowledge of the facts, the defendants were released by the issuing of that new certificate and its acceptance.

In answer to this allegation of the defendants, plaintiffs' counsel allege and contend and ask you to find as a fact that they, the plaintiffs, had no knowledge of any change in the membership of the association before or after the death of Mr. Derickson; that neither they nor their intestate, Dr. Gibson, had knowledge on or prior to October 10, 1893, that Mr. Derickson ever was a stockholder, and that by reason of this want of knowledge and ignorance on their part as to the membership of the banking association, they were not affected by changes in the ownership of shares, and that they did not voluntarily surrender an old for a new security. They alleged that so far as the plaintiffs are concerned they have now the same remedy, the

same security they had when the money was first deposited in 1886, that is the Meadville Savings Bank and the individuals who composed that partnership. [The defendants here, D. V. Derickson's executors, through their attorneys, argue and expect you to find as a fact that both Dr. Gibson in his lifetime and his administrators after his death and prior to the death of Mr. Derickson, had knowledge of the membership of Mr. Derickson in this association. That is, that you have a right to infer such knowledge. There is no direct proof of the fact of such knowledge or want of such knowledge by any witness competent to testify to the fact. Gibson was long since dead, and his administrators, as we have ruled, are incompetent to testify to anything occurring or any fact existing prior to the death of Derickson, for the reason that Mr. Derickson's lips being closed by death the law closes the lips of the plaintiffs, the other parties to this transaction as to anything which occurred or any fact which existed prior to the death of Mr. Derickson.] [19]

[While there is no direct proof of knowledge or want of knowledge by the plaintiffs or either of them prior to the death of Mr. Derickson, yet the history of this series of transactions between them and the bank is in evidence. And if from this history or any evidence in the case you can reasonably infer knowledge by the administrators of Gibson prior to the death of Mr. Derickson of his membership, you may do so. If you find that they had such knowledge then we say to you as a conclusion of law that they were bound to take notice of Mr. Derickson's death,] [18] and that by his death the partnership as it existed at the time of his death became dissolved, and that if the business was thereafter carried on they were bound to know that it was being conducted not by the old but by a new partnership operating under the old name, of which Mr. Derickson's estate was not a member. So far as the death of Mr. Derickson is concerned the law imputes to the plaintiffs knowledge of that fact without any proof. If, with knowledge of these facts they, the plaintiffs, voluntarily surrendered for cancelation and destruction the obligation they held and took a new one from different parties in satisfaction thereof, then they cannot recover in this action. So if you find from the evidence that plaintiffs had knowledge of the transfer of shares after Mr. Derickson's death, thereby working a change in and a new

partnership prior to October 10, 1893, and with knowledge of these facts voluntarily accepted in lieu of the old certificate a new obligation of a new partnership, composed in part of new or different members, then we say to you that the plaintiffs cannot recover in this action.

Upon this point, however, you have the testimony of both plaintiffs, Mr. Powell and Mr. Clark, that after Mr. Derickson's death and prior to October 10, 1893, they acquired no knowledge of any transfers of shares, and consequently had no knowledge of any new partnership caused or arising by reason of transfers of shares. You have also the testimony, as I remember, of the plaintiffs that between the time of the death of Mr. Derickson and the time when they surrendered the old certificate—that is between July 21, 1891, and October 10, 1893—they did not learn that Mr. Derickson in his lifetime had been a shareholder in the bank. [If they had such knowledge, therefore, you will probably conclude that they acquired it before the death of Mr. Derickson,] [26] although all the evidence throwing light on this question is for you. It is your duty, gentlemen, to determine the facts in controversy. You find facts from evidence, but not without evidence. Facts may be found from direct and positive testimony or proof to the effect that they exist; or facts may be found by inference from the existence of other facts when the relation between the two is such that the one is necessarily the concomitant of the other. There can be no inference however, from facts not shown positively or negatively to exist. It is only where a fact has been established that another can be inferred from it.

Now what are the facts here? What knowledge had these plaintiffs that Mr. Derickson in his lifetime was a member of this banking firm? Can you fairly infer such knowledge on the part of the plaintiffs? If they had such knowledge on the 10th day of October, 1893, then what occurred at that time? With what mind were the papers changed on that day? Was there an intention on the part of the plaintiffs with a knowledge of the facts affecting their rights to substitute a new security for the old one? Did a novation under these circumstances take place at that time? If so, and the old certificate was surrendered to be canceled, to be destroyed, to be thereafter void and of no validity, then the plaintiffs cannot recover in this case.

If on the other hand plaintiffs had not on the 10th day of October, 1893, knowledge of the facts affecting their rights, and in ignorance thereof accepted one paper for another without knowing that by so doing they were accepting a different security from that which they had, then we say to you that the plaintiffs are entitled to recover in this case.

[We call your attention to the fact that on the 10th day of October, 1893, the plaintiffs were not present at the bank; they were represented there by their agent or attorney, Mr. Roddy. What was there done in reference to the certificate of December 11, 1890, was done by Mr. Roddy as the agent of the plaintiffs. While the plaintiffs were not there at that time and were represented only by their agent, it was their duty upon learning what had there been done to either ratify it or disaffirm it. If Mr. Roddy acted without authority, or exceeded his authority, in surrendering the old certificate and taking a new one, it was the duty of the plaintiffs promptly upon learning of this fact to advise the bank that they did not so desire and to make their claim upon the old certificate.] [20]

Counsel upon both sides have requested us in writing to instruct you upon certain propositions. The plaintiffs here through their attorneys ask us to instruct you.

[First. That by the articles of copartnership and the evidence offered in this case, the persons doing business under the name and style of the Meadville Savings Bank constituted a common law copartnership, and each member became individually liable for the debts of the said firm. Our answer is this: Not purely a common law partnership, but members thereof became liable to creditors as in a common law partnership.] [22]

[Fourth. That the taking by the plaintiffs on the 10th day of October, 1893, of the last certificate, identical in form and style of the former one from the Meadville Savings Bank, less the amount then paid subsequent to the death of the said D. V. Derickson did not thereby release the estate of said Derickson, it not being a payment of the original debt or a novation. Our answer is this: This question with all the evidence bearing thereon is submitted to the jury with the instructions bearing thereon, for them to determine.] [23]

[Fifth. They ask us to instruct you that at the time of the receiving by the plaintiffs of the certificate of date of October 10,

1893, from the Meadville Savings Bank, of the balance remaining unpaid of the original deposit, it having been shown that the same officers as theretofore were still doing business without change and without change of name or business of said copartnership, or without any notice or information being given to the plaintiffs of any change in said copartnership at that time or any other time, by death or otherwise of any of its members and copartners. And it further appearing that the plaintiffs' administrators or their agent had no knowledge of any change in said copartnership, that in such cases the receiving and taking of said certificate was not a payment of the original debt or a novation. Our answer is this: If the facts were as here assumed we would affirm this point; but we will not assume the facts to be as here stated and therefore refuse to affirm this point.] [24]

[Sixth. That the onus is on the defendants to show that the acceptance of the present certificate at that time was a discharge of the old indebtedness, and on failure so to show on their part the verdict of the jury must be for the plaintiffs. Our answer is that as applicable to the facts in this case this point is refused. It is the duty of the jury to take into consideration all the evidence bearing upon the acceptance of the new certificate, whether such evidence has been introduced by the plaintiff or by the defendants. If the evidence of the plaintiffs does not show such acceptance then the burden is on the defendants to show it. But you should consider all the evidence bearing upon the question.] [25]

The defendants have also made requests in writing.

[First. That when D. V. Derickson died, his relation as a partner in the firm known as the Meadville Savings Bank ceased, and his estate or his executors were not substituted for him as a partner in said firm. *Answer:* That point is affirmed.] [27]

[Second. If the jury find from the evidence that the other members of said firm, whether alone or in conjunction with new members introduced after the death of D. V. Derickson, continued to carry on the business of said firm, and as continuing, not liquidating partners they gave a new certificate of deposit and lifted and canceled the old one, it showed the intention upon their part to end the indebtedness of the old firm, and to

make it a debt of the new one. *Answer:* Having in view the articles of association and the methods of doing business by the bank, as shown by the evidence, this point is affirmed.] [28]

[Third. If the plaintiffs, through their agent, with knowledge actual or imputed of the death of D. V. Derickson, and of a change thereby resulting in the firm as constituted in his lifetime, surrendered the old certificate of deposit and accepted a new one from the new firm, this is evidence strongly tending to show their consent to cancel the debt of the old firm, and to accept in lieu thereof the certificate of the new firm. *Answer:* This point is affirmed.] [29]

[Fourth. If the jury find from the evidence that the firm as constituted on the 10th day of October, 1893, received the old certificate and gave therefor part cash and a new certificate for the balance, and marked the old certificate "paid," it is strong, clear evidence that it was the intention of said firm to absolutely end the old certificate. *Answer:* That point is affirmed.] [30]

[Fifth. If the jury find from the evidence that at that time the plaintiffs or their agent accepted part cash and a new certificate for the balance of said old certificate, and at same time receipted for the amount of the old certificate, principal, and interest, it is strong, clear evidence of his or their intention to end the existence of the old certificate, and to make substitution therefor of the new one. *Answer:* That point is affirmed, as explained in the general charge touching the duty of the plaintiffs in case their agent acted without or exceeded his authority in taking the new certificate.] [31]

[Sixth. If the jury find from the evidence that Otto A. Stolz became a partner in said firm subsequent to the death of D. V. Derickson, and that the business of the bank was continued and carried on by the firm as constituted including Mr. Stolz; and that in the regular course of business of said firm a new certificate was issued on October 10, 1893, for the old one surrendered for cancelation, Otto A. Stolz became bound by such new certificate and liable for the debt thereby represented. And if this be so it emphasizes the inference of a novation— that is that D. V. Derickson was released. *Answer:* Having in view the articles of association and the methods of doing business by the bank as shown by the evidence, and in the

absence of other evidence, this point is affirmed.  Except the latter clause thereof, which we affirm only on condition that the plaintiffs had knowledge of the membership of Otto A. Stolz.] [32]

At 10:48 A. M., Thursday, January 23, 1896, being the following morning, the jury appeared and asked further instructions upon the following point, submitted to the court in writing by the foreman of the jury.

" Your Honor, If the court please we would like to ask: If in the case of D. V. Derickson's death, was his estate released from liability in this case according to law?  Can your Honor give us any light on this point? "

By the Court: We instructed you, gentlemen in our charge that the plaintiffs allege, and that the defendants do not deny, that Mr. Derickson was liable for the plaintiffs' claim here as a partner in the Meadville Savings Bank as it then existed at the date of the last certificate, that is on the 11th day of December, 1890.  We also stated that there is no question as to the liability of Mr. Derickson for the balance of that deposit at the time of his death.  That if his estate became afterwards released it was because of what occurred at the time the last certificate was issued, that is on the 10th of October, 1893.  His estate was liable up until that time.

[On that day, as you learned from the evidence, and we call your attention to it, the plaintiffs here, the administrators of Dr. Gibson, through their attorney or agent, Mr. Roddy, brought the certificate dated December 11, 1890, to the bank and surrendered it to the bank, receiving $1,000 on account of the principal, and some interest, accepting a new certificate for the balance, $5,400, with interest from July 18, 1893, as I remember.  We instructed you that if at that time plaintiffs had knowledge that Mr. Derickson had been a member of this partnership, and, having that knowledge, that they were bound to take knowledge of the fact of his death, and they accepted this new security knowing that he had been interested in the firm and had died, that they voluntarily accepted the new certificate instead of the old certificate and surrendered the old certificate for cancelation, that that would be a novation.  You would be warranted in finding from that a verdict for the defendants if you find the facts in that way.] [21]

Verdict and judgment for defendants.  Plaintiffs appealed.

*Errors assigned* among others were (1–5) rulings on evidence, quoting the bill of exceptions; (17–32) above instructions, quoting them.

*G. W. Haskins,* with him *Thomas Roddy, John O. McClintock* and *Q. A. Gordon,* for appellants.—The defense set up is that the transaction of October 10, 1893, constitutes a novation. This depends upon the intention of the parties to the transaction at the time: Kemmerer's App., 102 Pa. 558; Fleming v. Parry, 24 Pa. 47; Weakly v. Bell, 9 Watts, 273; Hart v. Boller, 15 S. & R. 162; 16 Am. & Eng. Ency. of Law, 868; Walstrom v. Hopkins, 103 Pa. 118; Brown v. Scott, 51 Pa. 357; Clark v. Brooks, 19 W. N. C. 333.

In case of deceased partner, a creditor does not lose his right against the estate of such partner unless there is evidence of intent to abandon his recourse on such estate: 16 Am. & Eng. Ency. of Law, 908; Collier's Executors v. Leech, 29 Pa. 404.

Unless a note from remaining partners is received by the creditor under an express or implied understanding that it is taken as payment, the liability of prior firm is undisturbed: Shamburg v. Ruggles, 83 Pa. 148; Christy v. Sill, 131 Pa. 492; Riegel's App., 16 W. N. C. 221; Bernard v. Torrance, 5 Gill & J. 383; Kimberly's Appeal, 7 Atl. Rep. 75; Hill v. Voorhies, 22 Pa. 68; Potter & Colfelt v. McCoy, 26 Pa. 458; Estate of Davis & Desauque, 5 Wh. 530; Hartley v. Kirlin, 45 Pa. 49; Newcomet v. Brotzman, 69 Pa. 185; 1 Addison on Contracts, sec. 109; Parsons on Partnerships, 409; Mason v. Wickersham, 4 W. & S. 100.

The refusal to permit Watkin G. Powell or Dr. Clark to testify to anything that had occurred before the death of Mr. Derickson was error: Smith v. Hay, 152 Pa. 377; Dixon v. McGraw, 151 Pa. 98; Braine v. Spalding, 52 Pa. 247; Struthers v. Kendall & Son, 41 Pa. 214; Scott v. Wells, 6 W. & S. 367; Leith v. Bush, 61 Pa. 395.

Mr. Kitchen was one of a number of the surviving partners in this bank against whom judgment had already been obtained by these plaintiffs for this debt, and was a competent witness for the plaintiffs for all relevant purposes: Collier's Executors v. Leech, 29 Pa. 404.

The errors in the charge raised in specifications of errors

Nos. 17 and 21 inclusive consists in giving too much prominence to the defendants' evidence, in ignoring the evidence of the plaintiffs, in instructing the jury that they might find a fact, on which the court made the case turn, upon inference when there was no evidence from which such fact might be inferred: Bank of DuBois v. Bank of Williamsport, 114 Pa. 1; Griffee v. Griffee, 173 Pa. 434.

*Samuel S. Mehard*, with him *James W. Smith* and *George F. Davenport*, for appellees.—The court committed no error to the plaintiff's injury in rejecting the testimony of Cyrus Kitchen as to matters that occurred before the death of D. V. Derickson: Porter v. Wilson & Kelly, 13 Pa. 641; Hogeboom v. Gibbs, Sterritt & Co., 88 Pa. 235 ; Alcorn's Exrs. v. Cook, 101 Pa. 209.

The court committed no error in rejecting the testimony of the plaintiffs themselves as to matters which occurred before the death of D. V. Derickson: Seip v. Drach, 14 Pa. 352; Grier v. Huston, 8 S. & R. 403 ; Fritz v. Thomas, 1 Whar. 66 ; 2 Williams on Executors, 6th Am. ed. (1771–1774) ; Crosse v. Smith, 7 East, 258; Conrad v. Keyser, 5 S. & R. 370 ; Meason v. Kaine, 63 Pa. 335 ; Miller v. Frazier, 3 Watts, 456; Kuester v. Keck, 8 W. & S. 16; Catawissa R. R. v. Armstrong, 49 Pa. 186.

It will be borne in mind, moreover, that the stockholders of this bank were not silent, secret or dormant partners.   Their situation was that of open partners with the rights and privileges as well as the liabilities of such: Deford & Co. v. Reynolds, 36 Pa. 332; Shamburg v. Ruggles, 83 Pa. 148; Christy v. Sill, 131 Pa. 504.

When the plaintiffs, with the knowledge of the facts, surrendered for cancelation the evidence of the old firm's debt, i. e., the certificate of deposit, and accepted in lieu thereof an obligation of the new firm, the clear implication is that both parties to this transaction intended to substitute the new certificate for the old one ; and it would follow as a necessary conclusion that the old indebtedness was ended and that the estate of D. V. Derickson was discharged : Hart v. Boller, 15 S. & R. 162; Estate of Davis and Desauque, 5 Wh. 530; Weakly v. Bell & Sterling, 9 Watts, 273; Mason v. Wickersham, 4 W. & S. 100 ; Stone v. Miller, 16 Pa. 456 ; Collier's Executors v. Leech,

29 Pa. 404; Evans v. Drummond, 4 Esp. 89; Reed v. White, 5 Esp. 122; Hart v. Alexander, 7 Car. & P. 746; Bedford v. Deakin et al., 2 Barn. & Ald. 212; Thompson v. Percival, 5 Barn. & Ald. 241; Spenceley v. Greenwood, 1 Fos. & Fin. 297; Bilborough v. Holmes, L. R. 5 Ch. D. 255; Arnold v. Camp, 12 Johns. 409; Parsons on Part., 4th ed. sec. 326.

OPINION BY MR. JUSTICE McCOLLUM, January 4, 1897:

It is not necessary to determine now whether Cyrus Kitchen was a competent witness to matters occurring in the lifetime of D. V. Derickson, deceased. The court below held that he was not. The plaintiffs were not injured by this ruling because the specific matters proposed to be shown by him were established by admittedly competent testimony and were not disputed. That the certificate of October 10, 1893, represented the balance of a deposit made prior to the death of Derickson and while he was a member of the firm, was conceded. For a similar reason it is not necessary to consider the specifications which relate to the admission of evidence tending to show the plaintiffs had knowledge of Derickson's death before their acceptance of the certificate of October 10, 1893 in lieu of the certificate of December 11, 1890. The plaintiffs admitted that they heard of his death at or about the time of its occurrence, but did not recall having seen the announcement of it in the papers. We do not decide that the rulings referred to were erroneous, but that if they were they were not prejudicial to the plaintiffs' case. We do not reverse a judgment for harmless error.

Did the court err in holding the administrators incompetent to testify they did not know that Derickson was a member of the firm? This was the crucial point in the case. If, with knowledge of his membership they surrendered the certificate of the old firm and accepted the certificate of October 10, 1893, in satisfaction of it, they would be, prima facie, liable to the estate they represented for a loss occasioned by the substitution of the latter for the former. They were parties to the suit having an interest, seemingly at least, adverse to the right of the estate represented by the defendants. The cases cited to sustain their claim of competency to testify as above stated are not applicable to their contention. The witnesses allowed to testify in these cases were not parties to the suit and had no apparent

interest in the result of it.  For six years or more the certificates representing the Gibson deposit, or the balance of it, were in the names of the plaintiffs as administrators of the Gibson estate, and during that time there were important changes in the membership of the firm, affecting the liability of the retiring and incoming partners.  The certificates so held by the plaintiffs represented deposits with the partnership issuing them, and the assets of the partnership and the personal liability of its members constituted the depositor's security.  Some of the certificates were payable on presentment duly indorsed, and others upon ten days' notice.  The last certificate held by the plaintiffs was issued on the 10th of October, 1893, the bank closed its doors on the 13th of January, 1894, and on the 20th of that month made an assignment for the benefit of its creditors.  No explanation was made by the plaintiffs of their delay in collecting the deposit, or of the financial repute of the partnership during the year preceding the assignment.  We think that under the circumstances shown there was no error in the rejection of the offer to prove by the plaintiffs that they did not know that Derickson was at any time a member of the firm known as the Meadville Savings Bank.  We discover no error in the admission of evidence of transfers of stock, of the introduction of new members, and the part they took in the management of partnership affairs, and of the action of the partnership in reference to the transfers.  These transactions were in accord with the articles of association, and had some relevancy to the question whether parties dealing with the partnership had notice of changes in the membership of it.

The evidence fully warranted the submission of the case to the jury on the questions whether the plaintiffs knew that Derickson was a member of the partnership, and if so, whether they accepted the certificate of October 10, in full satisfaction of the obligation imposed by the certificate of December 11, 1890. Neither a recital nor a summary of the evidence bearing upon these questions is deemed necessary.  There was no direct or positive testimony affecting the first question.  But the circumstances disclosed by the testimony were sufficient to fairly authorize an inference that the plaintiffs knew Derickson was a member of the partnership.  He was a prominent citizen of Meadville, and well known to them; he became a member of

the partnership in 1877, and continued to be a member of it until his death in July, 1891. From September, 1887, to October 10, 1893, the plaintiffs, as administrators of Gibson's estate, had dealings with the partnership, and from the nature of their transactions with it and their position as trustees, it may reasonably be inferred that they were not without knowledge respecting the membership of it.

The specifications based on excerpts from the charge, and on the answers to the points submitted by the parties are not sustained. The excerpts and answers considered in connection with the entire charge, furnish no warrant for reversing the judgment. All the specifications of error are overruled.

Judgment affirmed.