# Temme, Appellant, *v.* Schmidt.

*Liquor law—Selling to man of intemperate habits—Civil liability—Proximate cause.*

In an action by a woman against a licensed saloon keeper to enforce the civil liability for selling liquor to the plaintiff's husband, a man of known intemperate habits, after notice, it appeared that the defendant continued to sell liquor to plaintiff's husband notwithstanding a warning not to do so, that as a result the deceased continued on a drunken debauch for a week, and after having driven his family from his home, was sent to a hospital. He escaped from the hospital with insufficient clothing and without stockings. He was brought back and after his return gangrene in the feet set in and the deceased shortly afterwards died.    There was medical testimony to the effect that gangrene might follow as the result of alcoholism alone, although exposure would increase the liability.    *Held,* that it was for the jury to find whether the attack of gangrene was the result of the alcoholism and the exposure induced by it, or whether the gangrene was a separate and sufficient independent intervening cause of death.

MITCHELL, C. J., DEAN and BROWN, JJ., dissent.

Argued Nov. 2, 1903.    Reargued Oct. 24, 1904.    Appeal, No. 110, Oct. T., 1903, by plaintiff, from order of C. P. No. 1, Allegheny Co., June T., 1902, No. 85, refusing to take off nonsuit in case of Elizabeth Temme v. Philip Schmidt.    Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ., on reargument.    Reversed.

Trespass to recover damages for death of plaintiff's husband. Before BROWN, J.

508    TEMME, Appellant, v. SCHMIDT. ·

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Joseph M. Friedman*, for appellant.—One who commits an act of negligence will be held to have foreseen and to be responsible for whatever consequences, in the nature of things, may ensue therefrom without the intervention of some other independent agency, although in advance the result actually occurring might have seemed improbable : Bunting v. Hogsett, 139 Pa. 363.

In the following quoted cases the question of proximate cause was upon the trial left to the determination of a jury, and the action of the lower court in every instance in so doing was sustained: Haverly v. Railroad Co., 135 Pa. 50 ; Penna. R. R. Co. v. Hope, 80 Pa. 373 ; Penna., etc., R. R. Co. v. Lacey, 89 Pa. 458 ; Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122 ; Fairbanks v. Kerr, 70 Pa. 86 ; Oil Creek, etc., Ry. Co. v. Keighron, 74 Pa. 316 ; Fink v. Garman, 40 Pa. 95.

*L. K. Porter*, with him *S. G. Porter* and *Ed. G. Hartje*, for appellee.—If the facts are not in dispute the question of proximate cause is to be determined by the court, and not by the jury : Bunting v. Hogsett, 139 Pa. 363 ; West Mahanoy Twp. v. Watson, 112 Pa. 574.

OPINION BY MR. JUSTICE POTTER, December 31, 1904 :

This action was brought in the court below to enforce in behalf of the plaintiff and her children the civil liability of the defendant for selling intoxicating liquor to Albert Temme, the husband of the plaintiff, a man of known intemperate habits. It is alleged that, by reason of the sale of the liquor to Albert Temme, and its use by him, he became intoxicated, and unable to care for himself, and was for a considerable period stupefied and delirious, and unduly neglected and exposed himself by reason thereof, so that in consequence he sickened and died. The question in the case was, whether the liquor sold and furnished by the defendant was the proximate cause of his death. At the close of the testimony offered by the plaintiff the trial court entered judgment of compulsory nonsuit, and the subse-

quent refusal of a motion to take it off is here assigned as error.

If the facts were not in dispute, and if the only inferences to be drawn from them were inconsistent with the claim of the plaintiff that the death of her husband was properly chargeable to the act of defendant in selling liquor to him, then the entry of the nonsuit was proper. But, if the evidence is fairly open to another construction, then the question of proximate cause should have been submitted to the jury, to be determined as a fact, in view of all the circumstances attending it. The question always is in such a case, was there an unbroken connection in the series of events between the wrongful act and the injury? An examination of the evidence shows that Albert Temme had for years indulged to excess in drink. That, when under the influence of liquor, he acted like a maniac. That about the first of December his wife notified the defendant not to sell her husband any more whisky, but the notice was not heeded. That whisky was sold to him both at the bar of the defendant and in bottles which he brought home and drank almost continuously, keeping himself in a state of prolonged debauch. That his conduct was such that his wife and children were compelled to leave the house on or about Monday, December 2. A son about fifteen years old stayed with him, attempting to care for him. He took this boy with him to defendant's saloon on Tuesday night and drank liquor, and got a bottle and took it home with him, and when that was done, he went back and got another bottle, and, according to the testimony of the boy, kept it up in this manner all the week, and was drunk all that time, practically going without food, and subsisting only upon whisky. On the next Sunday a physician was called in, who testified that he found on Albert Temme symptoms of delirium tremens, and that he was suffering from alcoholism and the results of exposure. He ordered him taken to the hospital, which was done the same evening. The physician at the hospital testified that when he first saw him there, some four days afterwards, he was in a cell in the alcoholic ward, and that he was then delirious, presumably (he says) from alcoholism. It also appeared that he escaped from the hospital for a short time and wandered around in December weather,

without stockings or sufficient clothing, and that he was recaptured and taken back to the hospital. A gangrenous condition developed in his feet, and he died on December 15.. Doctor McGrew, who examined him at his house and found no indication of gangrene at that time, gave it as his opinion that the gangrene which developed at the hospital was probably caused by alcoholism and exposure. In his judgment alcoholism alone would produce gangrene, and, quoting his own language, he said: "I suppose the exposure would help it along. Certainly the man should have been confined to bed and had good attention from the first. That was my idea in sending him to the hospital. The fact of the matter was, that he would have died if the man went on the way that he was doing ; he did n't have any chance at all. That is the reason I advised him to be sent to the hospital, and I suppose his delirium continued there as he escaped from there. In fact the man should have been confined to bed in a straight-jacket and kept in bed some how or another."

Now here was a succession of facts and circumstances beginning with the sale of liquor by the defendant to Albert Temme and extending to the time of his death, some two weeks later. Was there any intermediate cause not attributable to the original wrong, which brought about the death? Or was the succession of events so linked together as to constitute a natural whole?

This court said in Davies v. McKnight, 146 Pa. 610: "It is not easy, in a case of this kind, to trace with absolute certainty the death to its proximate cause. But the liquor was undoubtedly the proximate cause of his falling into the gutter and the consequent exposure, and it was for the jury to find whether the attack of pneumonia was the result of the exposure ; in other words, a continuous causation from the furnishing of the liquor." And in Brashear v. Traction Co. 180 Pa. 392: Where an injury to a woman resulted in premature childbirth followed by tetanus which caused her death, and the medical testimony agreed that, while tetanus resulting from childbirth is comparatively rare, there is a distinct relation between it and childbirth, especially miscarriage, and it is one of the natural and probable consequences to be apprehended, and there was no evidence that would have justified

the court in saying that there was an intervening independent cause, the question of proximate cause, was held to be for the jury. Our Brother FELL said (p. 396) : " The causal connection was shown and the continuity of effect was traced through the succession of events. No other cause of death was assigned. True, it was shown that the disease was caused by specific infection, but by the same witnesses it was shown that the miscarriage made the deceased especially liable to infection." And again in McCafferty v. Penna. R. R. Co., 193 Pa. 339, we said (p. 344) : " The connection between the accident and the death was not clearly established. The deceased was injured by the derailment of the car in which he was riding on April 1, 1896. He lived until April 12, 1897, and the immediate cause of his death was an abscess on the liver. A month before he died he had a severe attack of grippe. It was incumbent on the plaintiff to show with reasonable certainty that the abscess was caused by the injury received. This was difficult to do, as the disease is one whose origin is difficult to trace. The medical testimony produced by the plaintiff was in itself far from convincing, but it was fortified by proof that her son had never recovered from the effect of his injuries, and that they were apparently internal and indicated a serious derangement of the liver before he had the grippe. We are not prepared to say that the court should have instructed the jury that the testimony did not warrant the conclusion that the death was the natural and proximate consequence of the accident. The question, however, is one which should be submitted with most careful instructions."

In the present case, there is testimony upon the part of the plaintiff, which if believed by the jury, is sufficient to warrant a finding that the liquor sold by the defendant to the decedent was the proximate cause of the attack of alcoholism, and the delirium and exposure which accompanied it. There was medical testimony to the effect that gangrene might follow as the result of alcoholism alone, although exposure would increase the liability. But it was for the jury to find whether the attack of gangrene was the result of the alcoholism and the exposure induced by it, or whether the gangrene was a separate and sufficient independent intervening cause of the death. We think that the inferences to be drawn from the facts dis-

closed by the testimony were not so clear as to justify the court in taking from the jury the determination of the proximate cause of the death.

The first assignment of error is sustained.

The judgment is reversed and a procedendo awarded.

MR. JUSTICE BROWN, dissenting:

There is no positive evidence that after December 3, 1901, the appellee had furnished any liquor to the husband of the appellant. On Sunday, December 8, he was taken to the hospital. On Tuesday, the 10th, he escaped from it and wandered about hatless, having, according to the testimony of the plaintiff, "nothing on but his shoes, no socks, no underwear, no underdrawers." On the 12th, the resident physician of the hospital began to treat him, and saw him three or four times a day until he died. That physician was the only witness who undertook to say what the cause of death had been. He stated that gangrene in the foot was the active cause, superinduced by cold and frost, and that the deceased had been afflicted with it for probably twenty-four hours before his death. Dr. McGrew, who had been the regular physician of the deceased, did not see him after he was taken to the hospital. This witness was asked what, in his judgment, had been the cause of the gangrene, if informed that the deceased had suffered from it a week after his admission to the hospital. The reply was, he thought alcoholism and the exposure would bring it on. He further stated, in his examination in chief, that "the man should have been kept in bed somehow or other." In the face of this, a jury could not truly find that the liquor alleged to have been furnished by the appellee to the deceased after December 3 had been the direct, proximate cause of the death; but, by sending the case to a jury, he may be subjected to the serious consequences of a guess that he was directly responsible for the death. Such a verdict would mean that he was responsible for the escape of the deceased from the hospital out into the cold but half clad and with no stockings on his feet; for the attending physician testifies that the gangrene from which he suffered after being admitted to the hospital resulted from exposure and was the direct cause of death. In Davies v. McKnight, 146 Pa. 610, on which the appellant mainly relies,

a recovery was had and sustained because "the liquor was undoubtedly the proximate cause" of the deceased's falling into the gutter, "and the consequent exposure." It cannot be pretended that liquor furnished by the appellee, whenever it may have been furnished, was the proximate cause of the exposure of appellant's husband. I would not disturb the judgment of nonsuit.

MITCHELL, C. J., and DEAN, J., concur in the dissent.