## Bruggeman, et ux., Appellants, *v.* City of York.

*Negligence—Municipality—Stagnant pool—Infant—Pneumonia—Proximate cause—Nonsuit.*

1. In an action for injuries or death resulting from alleged negligence it is not enough for a plaintiff to show that the injury complained of was due to one of two or more possible causes if defendant was responsible for but one of them; plaintiff must go further and show that the cause for which defendant was responsible was the proximate one from which the injury followed as the natural and probable result, and that the events leading up to the injury are linked together as a natural whole without intermediate cause, not attributable to defendant's wrongful act.

2. In an action against a municipality to recover damages for the death of a nine-year-old boy, resulting from pneumonia alleged to have been contracted from stagnant water which the city permitted

to collect and remain in a street a compulsory nonsuit was properly entered where it appeared that about a week before the boy's death he had played in the cellar into which the water had overflowed, and had assisted his mother in cleaning the gutter in front of their home where the water was standing; that while the boy's death was the result of his unsanitary surroundings, his anæmic condition, which made him susceptible to the disease, might have been due to other causes, that pneumonia germs may exist in all localities, especially in cities where people are closely congregated, and that the boy might have acquired the germs from the school room or other streets, as well as from the street in front of his parents' home; and where it further appeared that no chemical analysis of the contents of the gutter in front of plaintiff's house was made to determine whether pneumonia germs actually existed there.

*Practice, C. P.—Trials—Evidence—Exclusion—Subsequent testimony—Appeals—Practice, Supreme Court.*

3. A judgment will not be reversed because of the exclusion of testimony where the witness is subsequently permitted to testify to substantially the same matters as were contained in the rejected offers or in the evidence excluded.

Argued May 17, 1916.　Appeal, No. 365, Jan. T., 1915, by plaintiffs, from judgment of C. P. York Co., August T., 1914, No. 124, refusing to take off compulsory nonsuit in case of John Bruggeman and Mary Ellen Bruggeman v. City of York.　Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.　Affirmed.

Trespass to recover damages for death of plaintiff's son.　Before ROSS, J.

The facts appear by the opinion of the Supreme Court.

The lower court entered a compulsory nonsuit which it subsequently refused to take off.　Plaintiffs appealed.

*Error assigned,* among others, was in refusing to take off compulsory nonsuit.

*Henry C. Niles,* with him *Michael S. Niles, Charles A. May* and *George E. Neff,* for appellants.—The death of the child was the proximate result of defendant's negli-

gence: Gudfelder v. Pittsburgh, Cin., Chicago & St. Louis Ry. Co., 207 Pa. 629; Scott v. Hunter, 46 Pa. 192.

Where the act complained of is one from which it can readily be foreseen that injury will result, the wrong-doer is liable for all results directly traceable thereto, even though the exact sequence from which the physical injuries result may not have been contemplated: McGrew v. Stone, 53 Pa. 436; Bunting v. Hogsett, 139 Pa. 363; Oil City Gas Co. v. Robinson, 99 Pa. 1.

If defendant's negligence concurred with some other event to produce the injury and both were closely connected with the injury in the order of events, defendant is responsible even though his negligent act was not the nearest cause in order of time: Burrell Township v. Uncapher, et al., 117 Pa. 353; Penna. R. R. Co. v. Hope, 80 Pa. 373.

The primary cause is not necessarily the natural and probable cause of the injury: Sturgis v. Kountz, 165 Pa. 358.

*John L. Rouse,* City Solicitor, for appellee.—The death of plaintiffs' son was not the proximate result of the alleged negligence of the defendant: Gosser v. Ohio Valley Water Co., 244 Pa. 59.

The city is not liable for the consequences of the back water, since it had a right to improve its own property, and to fight surface water as a common enemy; the plaintiffs could have protected themselves from the incursions of surface water: Strauss v. Allentown, 215 Pa. 96; Rielly v. Stephenson, 222 Pa. 252; Schweriner v. Philadelphia, 35 Pa. Superior Ct. 128.

The city was not bound to provide sewer facilities to carry off the water from its highways: Cooper v. Scranton City, 21 Pa. Superior Ct. 17; Carr, et al., v. Northern Liberties, 35 Pa. 324.

OPINION BY MR. JUSTICE FRAZER, July 1, 1916:

Plaintiffs sued to recover damages from the City of

York for the death of their nine-year-old son alleged to have been due to disease contracted from a stagnant pool of water the municipality permitted to collect and remain on the street in front of plaintiffs' residence. A nonsuit was entered by the court below on the ground of insufficiency of proof to show that death was caused by the alleged negligence of defendant, which the court subsequently refused to take off. The assignments of error raise the question of the correctness of this ruling and also the action of the trial judge in excluding certain questions asked expert witnesses called on plaintiffs' behalf.

Plaintiffs lived at the corner of Jessop Place and Rose alley in defendant city. The municipality constructed a fire engine house opposite plaintiffs' residence and in the course of the work raised the grade of the lot upon which the building was erected and in so doing caused water that formerly passed over its surface to collect in front of plaintiffs' dwelling and remain there and collect drainage water and filth of various kinds and become stagnant. On occasions of heavy rains the pool formed by the filling done by the city would overflow, causing the stagnant water to flow into the cellar of plaintiffs' house, making it damp and musty. On Sunday, September 8, 1912, plaintiffs' son played in the cellar of their home during the greater part of the day. On Tuesday, September 10th, after returning from school in the afternoon, he assisted his mother in cleaning the gutter of the street in front of their house. The odor arising from the gutter, while being cleaned, was very offensive. That evening the boy complained of not feeling well and ate but little supper and during the following day had little or no appetite. On Thursday he complained of stomach trouble and headache and on Friday remained home from school in the afternoon. He continued in this condition until Sunday, September 15th, when the family physician was called who found him suffering from pneumonia, from which disease the boy died the fol-

VOL. CCLIV—28

lowing Tuesday, September 17th. The attending physician testified that when he first saw the boy on Sunday he was in a very anæmic condition resulting in his opinion from impure air and because of this condition was unable to resist the attack of pneumonia which followed. The testimony further showed that anæmia may result from living in unsanitary surroundings, from improper food and from many other causes which disturb the natural functions of the various organs of the body, and that pneumonia is caused by germs attached to particles of dust that float in the air and come either from direct contact with persons who have had the disease or from expectorations in the street which become dry and are blown about by the wind. These germs may also be carried into the home on muddy shoes and when dry be breathed into the lungs. While pneumonia germs are not particularly dangerous to a person in good health, the converse is true when the subject is in an anæmic condition and consequently less able to resist an attack of the disease. Both physicians, who testified on behalf of plaintiffs, said in their opinion the death of the boy was the result of his unsanitary surroundings. They admitted, however, his anæmic condition might have been due to other causes and that pneumonia germs may exist in all localities, especially in cities where people are closely congregated and expectorations and unclean matter of various kinds accumulate and dry in the gutters of the streets, and that the boy may have acquired these germs from the school room or from the streets in passing to and from his home to the schoolhouse, or from any other place where he happened to be, as well as from the street in front of the house of his parents. It was also admitted that no chemical analysis of the contents of the gutter in front of plaintiffs' house was made to determine whether or not pneumonia germs actually existed there. In view of this testimony a verdict for plaintiffs would be the result of mere conjecture upon the part of the jurors, based on an inference selected from a

number of equally probable inferences, in other words, a mere guess as to the precise cause of the disease: Gosser v. Ohio Valley Water Company, 244 Pa. 59.

It is not enough for plaintiffs to show the injury complained of was due to one of two or more possible causes if defendant was responsible for but one of them. They must go further and show the latter cause was the proximate one from which the injury followed as the natural and probable result and that the events leading up to the injury are linked in succession together as a natural whole without intermediate cause not attributable to defendant's wrongful act. In the present case we are asked to permit the jury to infer the anæmia with which the deceased suffered was due to defendant's negligent act in permitting water to accumulate in the street and become stagnant and that his anæmic condition was the proximate cause of the pneumonia which followed, notwithstanding the evidence that the anæmia might have resulted from any one of a number of other causes, and the pneumonia germs may possibly have been acquired in other places. The case is similar to Gosser v. Ohio Valley Water Company, supra, where this court refused to permit the recovery of damages for death from typhoid fever alleged to have been contracted by drinking water from defendant's plant, the evidence there, as here, showing the possibility of the germs of the disease being taken into the system at a place other than that claimed by plaintiffs. In Temme v. Schmidt, 210 Pa. 507, relied on by plaintiffs, there was ample testimony to warrant the conclusion that the liquor sold to deceased by defendant was the direct cause of the attack of alcoholism which brought on delirium and resulted in exposure and death. There was a connected succession of events following from defendant's original wrong which left but little doubt that the alcoholism was the result of liquor furnished by defendant and that it was not procured from other sources. Here we start with a number of probable causes of the anæmic condition of the de-

ceased which rendered him susceptible to attack from the germs of pneumonia; the court was therefore right in declining to submit the cause to the jury and in entering a compulsory nonsuit.

The first to fourth assignments of error complained of the exclusion of certain questions asked expert witnesses relating to the effect upon the health of the occupants of plaintiffs' house from surrounding unsanitary conditions. The court sustained objections to these questions partially for the reason they were not in proper form. We deem it unnecessary to discuss the assignments in detail as the same witnesses were subsequently permitted to state their opinions on the matters upon which they were being interrogated, the one based upon the facts within his knowledge and the other in answer to a hypothetical question covering the facts of the case. We have frequently held that a case will not be reversed because of the exclusion of testimony where the witness is subsequently permitted to testify to substantially the same matters as were contained in rejected offers or in the evidence excluded: Powell v. Derickson, 178 Pa. 612; Fitzpatrick v. Union Traction Co., 206 Pa. 335; Hicks v. Harbison-Walker Co., 212 Pa. 437.

The judgment is affirmed.