# W. BUCKINGHAM v. PLYMOUTH WATER CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 6, 1891—Decided May 4, 1891.

1. In an action against a water company for negligence in supplying impure water to its consumers, resulting, as was alleged, in the sickness and death of plaintiff's children from disease, there being no submissible evidence of culpable negligence on the part of the defendant it was not error to order a nonsuit.

2. An offer to show that, before the sickness of the plaintiff's children, there were typhoid-fever patients near the banks of small streams emptying into a river some distance above the point whence the company drew a portion of its supply, did not tend to establish negligence on the part of the defendant.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and
WILLIAMS, JJ.

No. 386 January Term 1890, Sup. Ct.; court below, No. 333
January Term 1886, C. P.

On December 30, 1885, William Buckingham brought trespass against the Plymouth Water Company, averring negligence on the part of the defendant in furnishing an impure water supply to its customers. The declaration was not printed in the paper-books.

At the trial on December 9, 1889, it was made to appear that the defendant company was incorporated in 1875, under the act of April 29, 1874, P. L. 73, for the purpose of supplying water to Plymouth borough and vicinity. The principal source of supply was a stream called Coal Street creek, coming from the mountain back of the borough. Upon this stream, four dams were built for reservoirs, and an artesian well was also put down near it, between dams No. 1 and No. 2. In dry periods the supply was insufficient, and to supplement it, the company ran a supply pipe into the Susquehanna river, through which water was pumped into the distributing reservoirs.

In the fall of 1884 and the following winter, cases of typhoid fever began to occur in Plymouth. Towards spring it became

epidemic. There was a population of from 7000 to 8000 supplied with water by the defendant company, and among that number there were about 1200 cases of sickness. In April, 1885, five or six children of plaintiff had the typhoid fever and two of them died. It was made to appear in the testimony that two small streams, one called Toby's creek, the other Whitewash creek, emptied into the Susquehanna, one of them about 2800 feet above the in-take of the water company, and the other about a mile and three quarters above said point. These streams come in on the west side of the river, and it was shown that the mouth of the supply pipe was about 220 feet from the west bank. It was claimed by the plaintiff that the waters of both these streams were contaminated by sewage. There was evidence, also, that in January, 1885, there was a typhoid-fever patient in a house on the bank of Coal Street creek, whereon the reservoirs of the defendant company were situated; and that the excreta of this patient were thrown out upon the snow, and when the snow melted away, were carried into the stream and into the company's reservoirs.

Dr. Fred Corse, called for plaintiff, testified that in the fall of 1884 and winter of 1885 he had typhoid-fever patients along a little confluent of Toby's creek: " Q. How many cases did you have? " Objected to.

Plaintiff proposed to show that along the banks of Toby's creek and the tributaries to Toby's creek, during the winter previous to the breaking out of this epidemic in Plymouth, Dr. Corse had typhoid-fever patients, the dejecta from whom went right into Toby's creek and into the river above where the Plymouth Water Company got their water supply; to be followed by evidence that the Plymouth Water Company took water from the river at a point below certain streams, Whitewash creek and Toby's creek, among others, which emptied into the river a short distance above where they took their supply, and were infected with typhoid-fever germs. Plaintiff proposed to show, further, such a prevalence of typhoid fever on these tributaries, and such a condition of dejecta flowing into those streams that emptied into the river just above where the Plymouth Water Company took their water out, as would put any reasonable person upon guard and care to avoid the danger resulting from this condition of affairs.

Defendant objected, that the evidence offered was irrelevant at this stage of the case, unless it were shown that the company had knowledge of these typhoid-fever cases along the alleged source of its water supply.

By the court: We have listened with attention and interest to the argument with regard to the offer of evidence before us. The question involved is a vital one in the case. In order to rule upon it intelligently, it is necessary to consider the character of this suit, and then apply the well-established rules of evidence to the offer of testimony under consideration.

This action is against the Plymouth Water Company, for negligence, which, under our law, means want of ordinary care. They are liable, if at all, because they have been guilty of the want of ordinary care under the circumstances of the case. Now, the proposition in this offer is to show that they took water from the Susquehanna river and distributed it to their customers in Plymouth; also, to show that at the time in question, on the branch of Toby's creek or on Toby's creek, there existed certain cases of typhoid fever; that the excreta or dejecta from these patients, because of the nearness of the privies, as I understand it, to the stream, were carried down this creek to the Susquehanna river, and emptied into it, at a point a mile or a mile and a half above where the Plymouth Water Company took their water. The further proposition in the offer is to show that the company would, in law, be affected by constructive notice, first, of the fact that typhoid fever existed on this tributary of the Susquehanna river; second, that excrement or dejecta from the patients of this fever, went into the stream or creek; and third, and necessarily, that these dejecta or excreta would naturally be the cause of typhoid fever to parties who drank the water from the Susquehanna river below the point where the stream empties into it. The proposition is to show that the company must have constructive notice of all these facts, and therefore that they did not exercise ordinary care, under the circumstances, in distributing to their customers water from this source of supply. No such proposition has ever been made in any reported case I have ever read. We do not regard it as competent evidence, under the circumstances of this case, to establish negligence. The objection to the offer is sustained; exception.[1]

A like offer was made of testimony as to the condition of Whitewash creek, cases of typhoid fever along its bank, proximity of privies, etc., and the offer refused, because there was no proposal to follow with proof of notice to the defendant company of the fact of the fever cases along the stream; exception.[2]

Various offers by the plaintiff to prove the opinions and theories of medical experts as to the cause of the epidemic of typhoid fever, were also refused, under objections and exceptions sealed.

At the close of the plaintiff's case in chief, the defendant's counsel moved for a judgment of nonsuit, and after argument, the court, WOODWARD, J., filed the following opinion:

The defendant prays the court for a compulsory nonsuit for the reasons: 1. That no negligence has been shown on the part of the defendant company, to. warrant a recovery by the plaintiff in this action.   2. That if the injury complained of by the plaintiff was caused by the contaminated water, the plaintiff's evidence shows that the contamination of the water came from the act of strangers over whom the defendant had no control, and that said act was without their knowledge or consent.

The question of negligence is generally for the jury.   In actions for damages for injuries alleged to have been caused by the negligence of a defendant, it is usual to submit to the jury the question whether there has been negligence on the part of the defendant, or not; but there is a rule of practice also recognized by our courts, in such cases, which is this: Where there is no evidence upon which intelligent men could reasonably and properly find the fact of negligence, it is the duty of the court to withdraw the case from the jury.

Let us briefly recapitulate the facts in this case:

1. The disease which caused the death of two of the plaintiff's children, and the sickness of others, was typhoid fever, produced by drinking the water drawn from the supply pipes of the defendant.

2. The water was, and had been since 1876, taken by this company from a mountain stream or creek flowing from a source or spring some six hundred feet higher than the town.

Opinion of Court below.

Dams had been built across the stream, and the water was conducted into the pipes of the company from the reservoirs thus formed. Between the third and fourth dams, and in a house standing about sixty feet from the creek, there occurred in the winter of 1885, a case of typhoid fever. A portion of the dejecta, or discharges from the bowels of the patient, were thrown out of the back door of the house on the frozen ground, and were covered by the snow. Owing to a thaw or break-up, which occurred in February, 1885, this matter was carried into the stream, and polluted the water, producing an epidemic of typhoid fever in Plymouth, and causing the sickness and death of the plaintiff's children, as stated.

3. The evidence in the case does not show that the defendant company had any notice or knowledge of the fact that a case of typhoid fever existed in the house referred to, or of the fact that the dejecta had been thrown out upon the ground near the bed of the stream, or of the fact that typhoid fever is produced by a specific typhoid germ existing in the excreta of a person sick with that disease, which, being deposited in a stream, multiplies so that it contaminates the body of the water and reproduces the disease in the persons who drink it. Nor does the evidence show that the defendants owned or in any way controlled the property upon which the case of typhoid fever referred to occurred.

4. The evidence does show that the superintendent of the company, from time to time, went along the banks of the stream, for the purpose of examining its condition, and that he had made such an examination a few days before the epidemic appeared, finding nothing to suggest a danger of contamination of the water.

Finally, in view of the facts thus established by the evidence in the case, we deem it our duty to hold that the plaintiff has not shown that the sickness of his children was caused by the negligence of the defendants. The motion for a compulsory nonsuit is granted.

—A rule to show cause why the judgment of nonsuit should not be set aside having been discharged, the plaintiff took **this** appeal, assigning for error:

1, 2. The refusal of plaintiff's offers.[1] [2]

Syllabus.

15, 16. The entry of the judgment of nonsuit, and the discharge of the rule to show cause, etc.

*Mr. A. Ricketts*, for the appellant.

Upon the first and second assignments, counsel cited: Born v. Plankroad Co., 101 Pa. 334; Germantown Ry. Co. v. Walling, 97 Pa. 55; Bigley v. Williams, 80 Pa. 107. That the case under the evidence submitted was for the jury: Spear v. Railroad Co., 119 Pa. 61; Bier v. Manuf. Co., 130 Pa. 446; Fisher v. Railway Co., 131 Pa. 292, 297; Jacques v. Fourthman, 137 Pa. 428; Delaware R. Co. v. Jones, 128 Pa. 308, 314.

*Mr. H. W. Palmer* and *Mr. Alexander Farnham*, (with them *Mr. J. A. Opp*), for the appellee.

Counsel cited: Adams Exp. Co. v. Sharpless, 77 Pa. 516; Penna. R. Co. v. Fries, 87 Pa. 234; Penna. Canal Co. v. Burd, 90 Pa. 281; Commonwealth v. Water Works, 22 W. N. 429; Wilson v. McCullough, 23 Pa. 440; Bank of Pittsburgh v. Whitehead, 10 W. 397; Custer v. Bank, 9 Pa. 27; Emerson v. Gas Light Co., 3 Allen 411; Pollock on Torts, 36, 42, 128; Addison on Torts, 6, 28; Blyth v. Water Works Co., 11 Exch. 781.

PER CURIAM:

We need not discuss the rulings of the court below upon the plaintiff's offers of evidence, for the reason that their rejection did him no harm. The plaintiff's case disclosed no cause of action; and, if the evidence rejected had been admitted, he would not have been entitled to recover.

Judgment affirmed.