# Gosser, Appellant, *v.* Ohio Valley Water Company.

*Negligence—Water companies—Contaminated water—Typhoid fever—Evidence—Cause of illness—Statements to attending physicians.*

1. A jury cannot be permitted to find a verdict for plaintiff in an action against a water company to recover damages for a death by typhoid fever, alleged to have been caused by drinking impure water from defendant's water system, where such finding would be mere conjecture based on an inference selected from a number of equally probable inferences.

2. While a physician may testify to a statement by his patient in relation to his condition, symptoms, sensations and feelings, the necessity which justifies the admission of such testimony does not extend to declarations as to the cause of an injury, which is the subject matter of inquiry.

3. In an action against a water company to recover damages for negligently causing the death of plaintiff's husband, it appeared that defendant had on a certain day without notice to the public turned unfiltered water, pumped from the Ohio river two miles below Pittsburgh, into mains which supplied the inhabitants of a borough. There was no direct evidence that the water contained typhoid germs. Plaintiff's husband came to his home in the borough on the evening of the same day and was heard to turn the water faucet in his bath room before retiring. At three o'clock in the morning, he was taken ill with bowel trouble. Later at breakfast he was seen to drink water from defendant's mains. His illness developed into typhoid fever, from which he died. It appeared that his business required him to be frequently absent from home on business trips, during which he ate and drank at various hotels and other places. It was shown that the typhoid fever germ might be communicated to the human system by a number of causes, any one of which might have been present in this case. The lower court excluded evidence by the attending physician that the deceased said he drank two glasses of water from the bathroom faucet the night he was taken ill, and directed a verdict for defendant. *Held,* no error.

Argued Nov. 6, 1913. Appeal, No. 267, Oct. T., 1913, by plaintiff, from judgment of C. P. Allegheny Co., Fourth T., 1909, No. 183, for defendant, in case of Mary

A. Gosser v. Ohio Valley Water Company.  Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband.  Before CARNAHAN, J.       .
The opinion of the Supreme Court states the case.
The court directed a verdict for defendant upon which judgment was entered.  Plaintiff appealed.

*Errors assigned* were in giving binding instructions for defendant and in excluding evidence referred to in the opinion of the Supreme Court.

*W. H. S. Thomson,* with him *Frank Thomson* and *R. E. Anderson,* for appellant.—A water company must furnish ordinarily pure and wholesome water, reasonably free from infectious and contaminating substances, and is liable for injury resulting from its failure so to do:  Brymer v. Butler Water Co., 172 Pa. 489;  Peffer v. Pennsylvania Water Co., 221 Pa. 578;  Green v. Ashland Water Co., 101 Wis. 258.

It was competent to prove the statements of the deceased to his attending physician to show that he drank the water:  Omberg v. United States Mutual Accident Association, 101 Ky. 303;  West Chicago Street Ry. Co. v. Kennelly, 48 N. E. Repr. 996;  Lichtenwallner v. Laubach, 105 Pa. 366;  Lake Shore & Michigan Southern Ry. Co. v. Rosenzweig, 113 Pa. 519.

*William M. Robinson,* with him *Reed, Smith, Shaw & Beal,* and *Samuel McClay,* for appellee.—The court properly directed a verdict for defendant:  Wharton v. Bradford, 209 Pa. 319;  Friend v. Kramer, 236 Pa. 618;  Peffer v. Pennsylvania Water Co., 221 Pa. 578;  Buckingham v. Plymouth Water Co., 142 Pa. 221.

The evidence of the statements of the deceased was

properly excluded: Roosa v. Boston Loan Co., 132 Mass.
439; 3 Wigmore on Ev. Sec. 1722.

OPINION BY MR. CHIEF JUSTICE FELL, February 9,
1914:

It is alleged in the declaration filed that the plaintiff's
husband died of typhoid fever, contracted by drinking
impure water negligently pumped by the defendant, the
Ohio Valley Water Company into its distributing mains
and storage reservoirs. The defendant supplied water
to a number of municipalities near the Ohio river below
the City of Pittsburgh. It got its supply of water from
an island in the river on which were wells into which
the water from the river filtered through several feet of
sand and rock. The water was pumped from the wells
into a receiving cistern from which it passed to the
mains and reservoirs. The source of defendant's supply
was two miles below Pittsburgh, whose population was
over half a million, and all the sewage of the city
flowed into the Ohio river or its tributaries. On Jan-
uary 15, 1909, the river was so low that the defendant's
officers feared that the supply of water from the wells
would be insufficient for domestic use and fire protec-
tion, and at five o'clock on the evening of that day they
caused water to be pumped from the river into its receiv-
ing cistern. The pumping was continued for twelve
hours and during that period three-tenths of the water
that went into the cistern came directly from the river.

The plaintiff's husband was engaged in a business
which required him to visit frequently the larger cities
and towns in western Pennsylvania and it was his cus-
tom to be from home several days at a time, living at
hotels and eating and drinking at various places. He
came to his home between nine and eleven o'clock on the
night of January 15th, and before retiring was heard to
turn the water faucet in his bath room. About three
o'clock the next morning he had bowel trouble. A few
hours later, while at breakfast, he was seen to drink

water furnished his home through the defendant's mains. His bowels caused him some trouble until February 8th, when his sickness developed into a typical case of typhoid fever, from which he died March 15th.

The learned trial judge directed a verdict for the defendant and the questions to be considered are, first, whether upon the evidence admitted the plaintiff was entitled to go to the jury and, second, whether evidence was improperly excluded, which if admitted, would have required the submission of the case to the jury. It was shown that the water of the river above the company's pumping station and in its immediate vicinity was contaminated by sewage, but there was no direct testimony that it contained typhoid. fever germs, or that there were typhoid fever patients within the water shed from which the company got its supply of water. But assuming that it did contain them, there was no evidence that the deceased drank the water pumped from the river before his illness on the night of January 15th. No one saw him drink it, and the only testimony bearing on the subject was that it was his custom to drink water before retiring and that water was heard running from a faucet when he was in his bathroom. But if the water contained typhoid germs and he drank it before he was taken sick, it would not follow that his sickness resulted from it. He was constantly absent from his home during the day and frequently at night and of necessity drank water at other places that were supplied with unfiltered river water. It appeared from the plaintiff's testimony that typhoid fever is caused by a specific germ that may be communicated to the human system by water, milk, uncooked vegetables, fruit, uncooked shellfish, direct or indirect contamination and grains of dust in the air, when moist, and that it develops in many cases where it is impossible to define the source of infection. A finding by the jury under the evidence admitted would have been a mere conjecture, based on an

inference selected from a number of equally probable inferences.

It remains to consider whether testimony was improperly excluded which if admitted would have made out a case for the jury. An offer was made to prove by the physician who attended the deceased that while he was making a diagnosis, the deceased stated to him that he had drunk two glasses of water on the night of January 15th. This physician was called more than three weeks after the sickness commenced and he had testified that he found the deceased suffering with a well marked, typical case of typhoid fever. Since there was no dispute as to the bodily condition of the deceased or as to the nature of his disease, the testimony was inadmissible. While a physician may testify to a statement by his patient in relation to his condition, symptoms, sensations and feelings, the necessity which justifies the admission of such testimony does not extend to declarations as to the cause of an injury, which is the subject matter of inquiry. Roosa v. Boston Loan Co., 132 Mass. 439. In Wigmore on Evidence, sec. 1722, it is said, "Statements of the external circumstances of the injury, namely, the events leading up to it, the immediate occasion of it (e. g. that the person was knocked down by a horse) or the nature of the injury (e. g. that a leg was broken) do not satisfy the necessity principle, because they do not relate to an internal state, and thus other evidence is presumably available" and in support of the text numerous authorities are cited. Lichtenwallner v. Laubach, 105 Pa. 366, and Lake Shore & Michigan Southern Railway Co. v. Rosenzweig, 113 Pa. 519, cited for the plaintiff are not in conflict with this rule. They are authority only for the principle that statements by a patient to his physician in relation to his bodily ailments and symptoms, although in the nature of hearsay are admissible as exceptions to the general rule of evidence because of the necessity of the case, since many of them can be known only to the person who experiences them.

The failure to establish a causal connection between the death of her husband and the negligence alleged left the plaintiff's case without adequate support and it is needless to consider other questions raised by the assignments.

The judgment is affirmed.