# Kohlmeyer *v.* Ohio Valley Water Company, Appellant.

*Negligence—Water companies—Pollution, of water—Death of child—Case for jury.*

In an action against a water company to recover damages for the death of a child nineteen months old, a verdict and judgment for plaintiff will be sustained where the evidence shows that the defendant which ordinarily procured pure water from springs, had at a time of low water, and for a period of fourteen hours connected its pipes with a river contaminated with filth from the sewage of a near by city; that during this period the child drank the water, and subsequently died of enteritis; that the child had previously been in good health and had not drunk water from any other source, nor taken any food except a good quality of condensed milk, shown to be a wholesome kind of nourishment.

Argued April 22, 1914. Appeal, No. 45, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., Fourth Term, 1909, No. 158, on verdict for plaintiff in case of H. Erwood Kohlmeyer and Mary S. Kohlmeyer v. Ohio Valley Water Company. Before Rice, P. J., Orlady, Head, Porter, Henderson, Kephart and Trexler, JJ. Affirmed.

Trespass to recover damages for death of a child. Before Swearingen, J.

At the trial, Dr. W. H. Oyer was asked this question:

Mr. Thomson: "Q. Assuming it to be true that in January, 1909, the sewage in the city of Pittsburg was discharged into the Monongahela and Allegheny rivers by a system of sewers, about 150 in number, of varying sizes from eight inches up to twelve feet in size; that the amount of sewage so deposited into the streams within the city limits was about 100,000,000 gallons a day, and that that condition existed on January 15, 1909; that on the evening of January 15, 1909, about five o'clock in the evening, the defendant company, that was supplying water to

Bellevue and other boroughs, turned a six-inch pipe of water directly from the Ohio river into their cistern from which the water was pumped into other water directly into the system of the defendant company and it was forced to the residences of the persons being supplied with water in Bellevue and the other boroughs; that this child drank of this water on at least the morning of January 16, which was Saturday, and through and at different times during Saturday and Sunday and Monday morning, and on Monday morning the water taken from this system was boiled and then given to the child all through Monday and Monday night and Tuesday up until Thursday at the time of your second visit, when it was discontinued, and filtered water used thereafter; that the child was a normal and healthy child for at least a year prior to January 15, and that the beginning of this sickness was about noon on Sunday, January 16, and continued showing a loose condition of the bowels and an affection of the bowels up until the time of your first visit. Now, if these conditions are true, and assuming them to be true, and basing your judgment on those facts and also what you observed of the child, its condition, and to these and the progress of the disease resulting in its death, what, in your opinion, was the cause of this condition which you say was enteritis or inflammation of the bowels?"

Objected to, first, as incompetent, irrelevant and immaterial. Second, it is a hypothetical question which is improper in form. Third, it does not contain a statement of all the material facts either proven or necessary to be proven to entitle the plaintiff to a recovery in this case. Fourth, the witness cannot express an opinion with regard to the cause of this child's death based upon the facts stated in the hypothetical question and based upon his knowledge of medicine owing to the fact that enteritis may be due to so many different causes and it is impossible for the witness to express a specific opinion to a reasonable certainty as to the cause of this enteritis.

Objection overruled and bill sealed for defendant. *Answer:* I think this water materially contributed to the child's condition. [3]

Practically the same hypothetical question was asked several other physicians, all of whom answered to the same effect. [4–8]

Verdict and judgment for plaintiff for $1,459. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2) refusal to enter judgment for defendant n. o. v.; (3–8) rulings on evidence, quoting the bill of exceptions.

*William M. Robinson,* with him *Samuel McClay* and *Reed, Smith, Shaw & Beal,* for appellant.—Defendant was not negligent: Peffer v. Pennsylvania Water Co., 221 Pa. 578; Buckingham v. Plymouth Water Co., 142 Pa. 221; Com. v. Towanda Water Works, 15 Atl. Repr. 440; Friend v. Kramer, 236 Pa. 618.

*W. H. S. Thomson,* with him *Frank Thomson* and *R. E. Anderson,* for appellee.—The negligence of the defendant is conclusively shown by its intentional furnishing of filthy and polluted water to its customers, in plain violation of the duty which it owed to the public. That a water company must furnish ordinarily pure and wholesome water, reasonably free from infectious and contaminating substances, and is liable for injury resulting from its failure so to do, is recognized by the authorities: Brymer v. Butler Water Co., 172 Pa. 489; Peffer v. Penna. Water Co., 221 Pa. 578; Green v. Ashland Water Co., 101 Wis. 258.

The opinion which the witness was permitted to give was necessarily based on scientific information which the physicians were presumed to have: Com. v. Crossmire, 156 Pa. 304; Mfg. Accident Indemnity Co. v. Dorgan, 58 Fed. Repr. 945; Eufaula v. Simmons, 86 Ala.

515; Hardimen v. Brown, 162 Mass. 585; Kliegel v. Aitken, 94 Wis. 432; First Nat. Bank of Easton v. Wireback, 106 Pa. 37; Yardley v. Cuthbertson, 108 Pa. 395.

OPINION BY HENDERSON, J., July 15, 1914:

The defendant company was incorporated under the act of 1874 to supply water for the use of the inhabitants of Bellevue and other municipalities in the Ohio River Valley. Its obligation was to furnish water that was ordinarily and reasonably free from such infection or contamination as causes water to be unsuitable for domestic purposes and unsafe and dangerous to health and life: Brymer v. Butler Water Co., 172 Pa. 489; Peffer v. Penna. Water Co., 221 Pa. 578; Com. v. Towanda Water Works, 15 Atl. Repr. 440; Green v. Ashland Water Co., 101 Wis. 258. Having acquired a source of supply the act of April 22, 1905, forbids that any additional source of supply be used without a permit from the commissioner of health, the action of the commissioner with respect thereto being subject to review by the court of common pleas of the proper county. And the same statute puts all streams and springs and all bodies of surface and ground water within the boundaries of the state under the control of the health authorities of the state for the prevention of pollution and contamination, especially with reference to the discharge of sewage therein, of which sewage it was said in Com. v. Kennedy, 240 Pa. 214, that it is the most efficient medium for the dissemination of infecting germs and that when this deleterious substance pollutes any public stream the public health is endangered thereby. There is, therefore, in this commonwealth both legislative and judicial recognition of the danger ensuing from the discharge of sewage into the streams of the state and particularly into those streams which are sources of water supply to municipalities. The company is bound to exercise diligence in the effort to preserve its water supply from pollution. Its charter priv-

ileges are special, its business is prosecuted for profit and its express and implied obligations are to be fairly and in good faith complied with. The circumstances and conditions out of which the pending litigation arose are not in dispute: For a long time the defendant had obtained its water supply from wells on Neville Island. These wells, more than thirty in number, were sunk to a considerable depth below the surface into the sand and gravel and the water thus obtained was pumped to a reservoir for the supply of the borough of Bellevue. In January, 1909, the water was low in the river and the defendant connected one of its wells with the river by a six-inch pipe through which water was drawn directly from the river for about fourteen hours and distributed in its service. The place at which the water was taken was a short distance below the city of Pittsburg and below the places at which all the sewage of that city was discharged into the river. This discharge was 100,000,000 of gallons or more per day. Nearly one-third of the water supplied while the water was pumped directly from the river was taken from that source. The evidence shows that careful tests of the water of the Ohio and of the Monongahela and Allegheny rivers at Pittsburg were made at different times under the direction of the Department of Public Works of the city of Pittsburg with the result that the water was found to be heavily charged with excrementitious matter dangerous to health and that the water was unfit for domestic use. These tests were made some months after the injury complained of, but the evidence shows that the conditions as to sewage were the same at the time the tests were made that prevailed when the defendant supplied the water from the river. The plaintiff's house at Bellevue was connected with the defendant's water service and water was used in the house at the time the supply in part was taken directly from the river. The plaintiff's child, nineteen months old, drank water taken from the supply pipe in the

house after, the river water was turned into the well and within a short time became sick with the disease from which he died. This was shown to have been enteritis which the testimony of some of the plaintiff's witnesses attributed to the water taken from the river. The child had not drunk water from any other source nor taken any food except a quality of condensed milk known as "Gail Borden" milk, which had been his food supply for a long time and which was shown to be a wholesome kind of nourishment. He was not suffering from sickness of any kind at the time this water was pumped into the defendant's reservoir, and the evidence excludes any possible theory of the origin of the disease from any other food or drink. The testimony that the water had a "nauseating smell," that it contained in considerable quantity a "gray slime" with "dark streaks through it" and that it caused sickness in the other members of the family is not questioned, and from this evidence and that relating to the source from which the river water was taken the conclusion is warranted that the defendant failed in its duty to furnish a reasonably wholesome quality of water. It is not contended by the appellant that water polluted as this was shown to be was not a source of disease, and the affirmative evidence as to the origin of infectious enteritis points directly to the water in the defendant's pipes as the cause of the child's sickness. It is true that no evidence was offered to show that the water in the plaintiff's house contained a specific germ which necessarily produced the sickness, but in view of the well-known relation of impure water to health and the effect of sewage on the wholesomeness of water and the testimony of the expert witnesses as to the reasonable cause of the disease from which the child died such demonstrative evidence ought not to be required. If conclusions are to be drawn in judicial investigations only from evidence which excludes all possibility of error the field of legal inquiry must be greatly limited. Ab-

solute certainty cannot be expected nor required. As was well said by our Brother HEAD in Flaherty v. Scranton Gas Co., 30 Pa. Superior Ct. 448, a case involving the cause of the death of a child, the law "must act, if it act at all, on those reasonable inferences and probabilities which the intelligence and experience of specially fitted men enable them to draw from the external signs and symptoms of the hidden trouble within." The physicians called in support of the action were men of large experience familiar with the particular disease and well informed in regard to its causes, and we must regard their testimony as competent on the subject of the origin of the disease. The competency of the evidence elicited by the hypothetical questions propounded to the plaintiff's witnesses was in harmony with the decisions in many cases: Com. v. Crossmire, 156 Pa. 304; Flaherty v. Scranton Gas Co., supra; Kliegle v. Aitken, 94 Wis. 432; Hardiman v. Brown, 162 Mass. 585. The cases relied on by the appellant, Buckingham v. Plymouth Water Company, 142 Pa. 221; Gosser v. Ohio Valley Water Co., 244 Pa. 59, are readily distinguishable from the case before us. In the former there was no evidence that the defendant had knowledge or reason to believe that its water supply was contaminated in the unexpected and improbable manner shown by the subsequent investigation. A case of typhoid fever originated in a dwelling not far from a small stream which contributed to the water supply of the company. As a result of the thawing of snow and ice typhoid germs were supposed to have been carried into this stream and thence into the company's reservoir, but there was nothing to put the defendant on notice of the existence of the disease or that there was any communication between the house where the sickness occurred and the company's water supply. In the other case the plaintiff was a traveling man who had used water from many other sources and had eaten at many public places. It could not be said with any

reasonable assurance that the sickness of which he complained was not contracted from drinking other water or eating food at other places than his own home. In the appellant's case by a process of exclusion all other probable sources of sickness are eliminated and a probable and sufficient cause is shown to have been the necessarily unclean and unwholesome matter which for a short time the defendant distributed to its customers. The fact that its system involved the use of wells and a process of filtration through the sand and gravel of the island is evidence that the managers of the company did not consider the river water suitable for their purposes and they knew or should have known that the water of the river at a very low stage was polluted by the great volume of sewage flowing into it a short distance up the stream. We regard the case as one for the jury and that it was properly submitted at the trial.

The judgment is affirmed.