## Schlichtkrull et ux. *v.* Mellon-Pollock Oil Co. (No. 2), Appellant.

Argued October 3, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*George D. Wick,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant.—Judgment non obstante veredicto should have been entered in this case: Penna. Coal Co. v. Sanderson, 113 Pa. 126; Williams v. Ladew, 161 Pa. 283; Wheatley v. Baugh, 25 Pa. 528; Collins v. Gas Co., 131 Pa. 143; Pfeiffer v. Brown, 165 Pa. 267.

Before appellees could recover, it must be apparent that, at the time the Aronson No. 2 well was drilled, appellant could foresee that, if salt water got into appellees' water well from Aronson No. 2 oil well, appellee, Margaret Schlichtkrull, would have kidney stones from drinking the water in the water well: Penna. Coal Co. v. Sanderson, 113 Pa. 126; Collins v. Gas Co., 131 Pa. 143.

Undisputed analysis shows salty solution in appellees' water well and appellant's No. 2 Aronson Well to be of different chemical analysis.

*Clyde A. Armstrong,* with him *Charles M. Thorp, Jr.,* of *Thorp, Bostwick, Stewart & Reed,* for appellees.— The negligence of appellant in drilling Aronson No. 2 Well and the injuries to appellee resulting proximately therefrom were plainy shown: Collins v. Gas Co., 139 Pa. 111.

The injuries suffered by appellee, Margaret Schlichtkrull, resulted proximately from appellant's negligence. The physical facts do not in any way contradict appellees' testimony of the connection between Aronson No. 2 Well and their water well.

OPINION BY MR. JUSTICE SADLER, November 24, 1930:

Many of the facts involved in the present case are set forth in the one preceding, in which the judgment for permanent injury to land owned by three tenants in common was affirmed. There, damages were sought because

of negligence in drilling an oil well without the inser-
tion of proper casing, resulting in the pollution with
salt of the well in the Schlichtkrull house. This second
action was brought by its occupants, on the theory that
the use of the water by them produced kidney stones in
the wife, necessitating an operation. The general salty
condition of the water became evident in the fall of 1926,
yet the parties continued to consume it. As to the hus-
band, who was fully aware of the danger, a recovery was
denied, because of his contributory negligence, but as to
the wife, who became ill in May, 1927, a recovery was
allowed. A repetition of the testimony, showing negli-
gence in failing to properly protect the borings of the de-
fendant, is unnecessary, and the first opinion may be re-
ferred to for the evidence offered to prove its lack of due
care. It is insisted that the testimony produced did not
justify a recovery for the special harm here alleged to
have been inflicted, and, from the judgment entered, this
appeal has been taken.

It will be remembered that the drilling for oil by sev-
eral parties, in the vicinity of plaintiffs' home, began in
1920, causing the well water to become salty,—a condi-
tion temporarily corrected by 1923. Two years later
defendant opened a second well 988 feet distant, with
the result that the saline taste again became evident in
the fall of 1926, whereupon the husband complained in
writing of the presence of salt and sulphur. In May,
1927, his wife became ill, and her doctor expressed the
opinion that her trouble was caused by drinking the well
water, though he made no pretense of being an expert,
or of having chemically examined it. She was taken to
a hospital, an operation performed, and the presence of
kidney stones discovered, and removed.

Plaintiffs claimed in this action that her condition re-
sulted from consuming the contents of the well, which
had become salty through the lack of care of defendant.
She relied on proof of this condition as indicated by the
bitter taste, the opinion of her doctor that it caused her

illness, supplemented by an analysis made in 1929 of a sample of the water complained of, not, however, taken therefrom until the fall of 1928, eighteen months after her sickness, during which interval, according to plaintiffs, it had changed in character, becoming more cloudy and murky, indicating an increase of organic matter.

A chemist also testified as to the composition of the kidney stones, removed in 1927, but no evidence was offered which would justify a conclusion that they contained the same chemical substances as found in the water consumed. Defendant's expert also analyzed the water at the oil well and testified that the injurious elements, causing the illness complained of, were not present in the fluid which, it was contended, passed under ground into the water supply used by plaintiffs. Though the truthfulness of his testimony was in no way contradicted, the evidence was for the jury to pass upon, and cannot be considered here on this appeal from a refusal to enter judgment n. o. v. It must be entirely disregarded, for the burden was on the plaintiffs to show the connection with the water well, and also that the chemicals causing the injury were negligently carried to that point from defendant's operation, and as to this the proof was insufficient. In the absence of evidence that any dangerous mineral elements were transmitted and entered the water used by her, the claim made cannot be sustained.

The illness of Mrs. Schlichtkrull was not caused by the consumption of ordinary salt water, not unusually following the drilling of like wells, where percolations enter sources of water supply,—a condition developed during the winter of 1926. No effort was made to determine whether the mineral salts found later at the home, or in the kidneys, were present when the sickness occurred; and the sample of water, taken in the fall of 1928, was not subjected to analysis until one year later. The only evidence offered by plaintiffs showed its character had in the meantime changed, becoming cloudy

and muddy. No proof was presented to show a similarity to the water in the oil well, or that surrounding it, though the presence of ordinary common salt was known, and it was of its existence that complaint was made to defendant in 1926, as well as of sulphur, which, however, did not appear in the subsequent examination made.

Dr. Stepp, a general practitioner, and not a chemist, gave it as his opinion that the illness of plaintiff resulted from the use of the well water, but he did not investigate its component parts, though he examined the analysis made by Dr. Buchmaster, plaintiffs' expert. He did state that infection may have been a factor in causing the formation of the kidney stones. Outside of the proof referred to, we find only the results of the investigation of the chemist made in 1929, and the evidence of Dr. Charles Murray,—the assistant to the operating surgeon, the latter not being called,—but neither made any examination of the water at the oil well to determine whether the mineral elements discovered at the house were present at the place first mentioned. The chemist's analysis of the well water disclosed calcium sulphates and carbonates, the ordinary sodium chloride or table salt, and a trace of magnesium chloride and carbonate, with some organic matter in suspension, whereas the kidney stones examined showed only calcium and magnesium phosphates, but no chlorides or carbonates, and a slight quantity of ammonium phosphate, and a large amount of organic matter. No sulphur, complained of in the letter of 1926, before referred to, was found in either. Dr. Murray, who examined the results of the chemist's work, stated there were five different causes which might produce obstructions in the kidneys, such as were discovered, but testified no one could state with certainty the reason for the formation of the stones found. In his opinion, the high mineral content of the water was a factor of first importance in causing the illness of Mrs. Schlichtkrull, but added that the same

chemical elements are contained in many kinds of food, and may be absorbed as a result of eating them.

Doctors Ellis, Donaldson and Dobbs, called by defendant, declared positively that there was no connection between the oil well water and the kidney stones, though their statements must be disregarded in determining whether judgment n. o. v. should be entered, as their oral evidence was for the jury. One fact admitted by the experts for plaintiffs was, however, corroborated by the doctors named, and may be considered. The former were confirmed in the statement made that the mineral elements found in the kidney stones frequently come from other causes than the water used. As Doctor Speaker, the defendant's chemist, declared: "There are more minerals [of the sort discovered in the well] taken in by food and vegetables, many, many times than that taken in by water." The possibility of infection from such source has been recognized by this court in Gosser v. Ohio Valley Water Co., 244 Pa. 59, 62, where the contamination complained of was asserted to have produced typhoid fever.

The burden of proving that the illness complained of was the result of the negligent act of defendant rested on the plaintiffs, for the mere fact that one of them became ill in 1927 is not sufficient to prove actionable want of care. During the fall, before complaint was made of the percolation of salt and sulphur, due to the failure to properly protect the oil well, no indication was given that other injurious elements were present in the water at the house. The physical condition of the wife was shown by her experts to be the result of absorbing magnesium salts, but no effort was made to show these came from the source complained of, rather than from other causes which might produce the kidney stones. If the defendant was in fault, it must be held liable for harm which might have been anticipated by one exercising ordinary prudence (45 C. J. 452, 655), but the evidence offered here did not show that the danger was such as

could have been foreseen,—a legal requirement before recovery can be had: Collins v. Chartiers Valley Gas Co., 131 Pa. 143, 160; Pfeiffer v. Brown, 165 Pa. 267.

No one testified that the chemical elements producing the infection, ordinarily passed, or were ever known to pass from an improperly protected oil well; or that such would pass, as here charged, through the ground for 988 feet, or that the deleterious matter found at the house was also present at the oil well, or was known by defendant's employees to be existent either in 1926, or at any later time. Nor was notice ever given that the percolations were objectionable, except as to the presence of salt and sulphur, and, as to the latter, no trace of it was found by the chemists. This situation brings the case within the rules laid down in Gosser v. Ohio Valley Water Co., supra, and Buckingham v. Plymouth Water Co., 142 Pa. 221, where illness was alleged to have been occasioned through transmission of typhoid germs by water companies, and the plaintiff failed to prove defendants had reason to anticipate the danger and the disease which followed. Both of the cases, in which a recovery was denied, are distinguished on this ground from Kohlmeyer v. Ohio Valley Water Co., 58 Pa. Superior Ct. 63, where it was proven that defendant had reason to foresee the injury inflicted, when it turned water, contaminated with sewage, into its service pipes.

Further, the evidence here disclosed that the kidney stones may have been produced in many other ways, as stated by the plaintiffs' expert, and there was a failure to sufficiently individuate the water as the cause. The rule enunciated in Bruggeman v. York, 254 Pa. 430, is therefore applicable. In that case the suit was brought for the death of one alleged to have contracted pneumonia as a result of the overflow into the cellar of the house from an insufficiently protected gutter located on the street. There, both physicians testified deceased had in this way become disabled, and that the illness arose from the unsanitary surroundings due to the overflow,

but might have originated from other sources. Justice FRAZER then stated (page 435) : "It is not enough for plaintiffs to show the injury complained of was due to one of two or more possible causes if defendant was responsible for but one of them. They must go further and show the latter cause was the proximate one from which the injury followed as the natural and probable result and that the events leading up to the injury are linked in succession together as a natural whole without intermediate cause not attributable to defendant's wrongful act."

In view of the fact that the water in plaintiffs' well was not analyzed until 1929, nearly two years after the illness, from a sample taken in 1928, conditions having changed in the meantime, and that the injurious elements claimed to have produced the kidney infection were not shown to have ever existed at defendant's oil well, the burden of proof essential to a recovery was not met. Nor should a verdict for plaintiff be permitted when the condition complained of might be as well attributed to other causes for which defendant was not responsible. Though it was negligent in failing to properly case its well, resulting in the percolation of salt water to plaintiffs' property, as found in the preceding case, yet it was not affirmatively shown that defendant knew of any danger in using well water impregnated with ordinary salt, the basis of the complaint made in 1926. It was not proven that the elements causing the sickness were of the same character as found at the oil well, or even that the water consumed was necessarily the cause of the kidney stones, which were of different chemical composition, and might have been produced in other ways as well.

The judgment is reversed and here entered for defendant.