# Whelen *v.* Eastern Coal Dock Company, Appellant.

*Workmen's Compensation Law—Loss of eyesight—Evidence—Proof—Sufficiency.*

In a claim under the Workmen's Compensation Law, where the evidence of medical experts is necessary to establish connection between the result complained of and the cause alleged, the case is not made out by the testimony of such experts to the effect that the injury might have resulted from the attributed cause. The experts must go further and testify at least that, taking into consideration all of the facts, it is their professional opinion that the result in question most probably came from the cause alleged.

Where in a claim for loss of the sight of an eye it appeared that the claimant suffered a slight injury to his eye, and that some months later he lost the sight of it, due to a diseased condition to which the injury might have been an exciting factor, there can be no recovery, as the testimony does not conform to the required standard of proof in such cases.

Argued October 2, 1922. Appeal, No. 39, Oct. T., 1922, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T. 1921, No. 3976, affirming decision of Workmen's Compensation Board, in case of Thomas Whelen v. Eastern Coal Dock Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Appeal from decision of Workmen's Compensation Board. Before SHOEMAKER, P. J.

The facts are stated in the opinion of the Superior Court.

The court sustained the decision of the Workmen's Compensation Board. Defendant appealed.

*Error assigned,* among others, was the judgment of the court.

*Alfred D. Wiler,* for appellant, cited: Stahl v. Watson Coal Co., 268 Pa. 452; Martini v. The Director General of Railroads, 77 Pa. Superior Ct. 529.

*James J. Regan, Jr.,* for appellee, cited: Chovic v. Pittsburgh Crucible Steel Co., 71 Pa. Superior Ct. 350; Cartin v. Standard Tin Plate Co., 263 Pa. 56; Stahl v. Watson Coal Co., 268 Pa. 452; Clark v. Lehigh Valley Coal Co., 264 Pa. 529; Whittle v. National Aniline & Chemical Co., 266 Pa. 356.

OPINION BY HENDERSON, J., December 14, 1922:

This case arises out of the claim of Thomas Whelen for compensation because of the total loss of sight in his right eye. The result complained of is alleged to have been produced by an injury received while the claimant was engaged in wheeling ashes. The ashes were hot and the wind, then prevailing, carried a portion of them to the claimant's eye, causing such discomfort and pain he was induced to apply to a physician for relief. A lotion was used and water was applied. The claimant did not work for "a week or two" after the injury, but continued in the service of the company until August 31, 1920, when he was discharged. The injury occurred on May 19, 1920. In October or November of the same year, Whelen entered the Pennsylvania Hospital for surgical treatment for hernia and was there sent to the medical department because of his systemic condition which made it inadvisable to perform an operation without a course of medical treatment. While in the hospital it was found he had iritis, for which he received treatment but without benefit. About the first of February, 1921, he went to the Wills Eye Hospital, where his eye was examined and it was found that he had "chronic iritis of recurring attacks." The claimant only came to the hospital once; and Dr. Hughes, of that hospital, testified that he did not know what was the cause of the condition of the eye as disclosed by the hospital record. Dr. Marsh, of the Pennsylvania Hospital, who carried out the treatment prescribed by Dr. Shoemaker, when asked whether the claimant's condition could be brought about by trauma, said "I have never heard of a case. Whether it could or

not I don't know." Dr. Langdon, a physician appointed by the referee, examined the claimant on the 17th of June, 1921, during the pendency of the case before the referee. With respect to the claimant's condition he testified, "for the eye to have been injured as Mr. Whelen claims it was and to have reached its present condition there would have to have been an injury to the superficial substance of the cornea, of which type of injury there is no sign; I therefore question very greatly whether the hot ash blowing into his eye had any bearing on his present condition." He further expressed the belief that the iritis and glaucoma from which the claim-. ant suffered, were undoubtedly caused by his syphilitic condition. In answer to the question, whether the contact of ashes with the eye would not naturally lower the power of resistance because of that condition, he said, "it is possible, but it is not, to my way of thinking, very likely; there are many cases where interstitial keratitis does follow a very minor injury, but it is unlikely—the exception rather than the rule; in Whelen's case it must have been a very minor injury to have left no mark on the cornea, and it is, as I say, extremely unlikely that such an injury could cause such a serious condition."

A careful examination of the record fails to disclose any testimony directly connecting the claimant's injury with the conditions found by the medical witnesses when the claimant went to the hospital in October or November, 1920, for surgical treatment. It does show that the trouble had its origin in a syphilitic condition. The testimony of the claimant does not disclose the condition of the eye between the time when he received treatment from the physician, immediately following the 19th of May, 1920, and the time when his eyes were examined in the hospital in October or November. The theory on which the claimant's case is based is that "the accident suffered by the appellee in the course of his employment by the appellant in May, 1920, lighted up the syphilitic condition, transformed a latent disease into activity and

caused it to localize in his right eye, the result of which has been the complete destruction of the vision." Such a conclusion could only be reached on expert evidence, and that we do not find in the record. The testimony of Dr. Hughes and of Dr. Langdon is directly against that theory as applied to the claimant's case, and the only other physician called, Dr. Marsh, stated that he did not know whether the condition of the eye could be accounted for on the claimant's theory.

Applying the law to the state of facts presented, we are all of opinion that the claimant has not produced evidence showing that his loss of sight is the natural and probable consequence of the contact of ashes with the eye. The Compensation Law has been liberally construed by the authorities to whom its administration has been committed; the same accuracy of proof has not been required as in trials at law. It is the rule, however, that where the evidence of medical experts is necessary to establish connection between the result complained of and the cause alleged, the case is not made out by the testimony of such experts to the effect that the injury might have resulted from the attributed cause. It must, at least, be made to appear that, taken into consideration all the facts, the result most probably arose from the cause alleged. This is the rule as declared in Fink v. Sheldon Axle & Spring Co., 270 Pa. 476; and in Morgan v. P. & R. Coal & Iron Co., 273 Pa. 255. The testimony under consideration does not bring the claimant's case up to this standard; at most, it cannot be said to have greater definiteness than that it is possible the alleged accident was the exciting cause, and the only witnesses who expressed opinion on the subject were adverse to the claimant's contention.

We are required, therefore, to reverse the judgment of the court and to enter judgment for the appellant.