## Hulitt v. Baldwin Locomotive Works.

*Workmen's compensation—Appeal from award—Province of court—Evidence—Expert testimony—Insufficient evidence—When case referred back to board.*

1. Upon an appeal from the award of compensation under the Workmen's Compensation Act upon the ground that there was not sufficient evidence to support the award, the only question for the court is whether there was evidence to support the finding of fact, and if there was such evidence, the award will be sustained.

2. Expert medical testimony in support of a claim for compensation must be that the condition of the claimant was related to or was the material and probable or direct or superinduced result of the injury, or most probably came therefrom.

3. Where the injuries complained of are immediately and directly or are naturally and probably the result of the proven accident, the conclusion, without medical testimony, may be safely drawn.

4. The disability, following closely upon the injury, is evidence to be considered with other evidence in the case, but in itself is not enough to show the result in question most probably came from the injury proved.

5. Where, in such case, an analysis of the testimony is required to ascertain if there is any evidence to sustain the findings of fact in controversy, the record will be remitted to the Compensation Board for further hearing and determination.

Appeal by defendant from order of Workmen's Compensation Board. C. P. Delaware Co., March T., 1926, No. 2090.

*Taylor, Chadwick & Weeks*, for appellant.

*Lutz, Ervin, Reeser & Fronefield*, contra.

FRONEFIELD, P. J., May 16, 1927.—The claimant seeks, under the Compensation Law, recovery from the defendant for the permanent loss of the use of his left arm.

The referee found that, "on June 8th, 1923, while in the course of his employment with the defendant, the claimant was holding what is called a 'backing out punch,' used to knock out condenser rivets, and while so doing the man who was helping him at his work, and who was using a mall weighing

about eight pounds, instead of striking the punch that the claimant was holding, missed striking it and accidentally struck the claimant on the left hand, thereby injuring the middle and ring fingers of said hand. That, notwithstanding said injuries, the claimant continued at his work, but in a few weeks' time began to notice a numbness in his hand, which grew worse as time went on, until he gradually lost the use of his arm, and quit work on December 15th, 1923, on account of said disability, and, notwithstanding medical treatment furnished by the defendant, he has now sustained the permanent loss of the use of said left arm," and awarded compensation accordingly.

The referee's findings were approved by the Compensation Board. This court is now asked to reverse those findings because the defendant claims, *inter alia*, there is no sufficient evidence to sustain the finding (*a*) that the injury to the fingers of the claimant caused the loss of the use of his arm; and (*b*) that the loss of the use of his arm was sustained in the course of his employment.

The only question which we are called upon to decide is whether or not there is evidence to support the findings of fact: Natalini *v.* Riefler, 286 Pa. 301; Stahl *v.* Watson Coal Co., 268 Pa. 452; McGuirk *v.* Sun Ship, 80 Pa. Superior Ct. 457.

There is no question but that the finding is justified that the claimant had his fingers injured by being struck with a mall used in the course of his employment, but the finding that the injury to his fingers caused the loss of the use of his arm is questioned as not having any evidence to support it. If there is such evidence, the finding will not be disturbed: Vorbnoff *v.* Mesta Machine Co., 286 Pa. 199.

The claimant testified that he was injured on June 8, 1923, and was treated at the hospital of the defendant; "and in a couple of weeks' time I noticed a numbness coming in my hand, and . . . after I went (to the company's doctor), he sent me to dispensary to be massaged. I continued with these treatments until the latter part of July, and seeing that I was getting no result . . . was then referred to Dr. Casselbury (defendant's doctor); after waiting for three or four days, he told me that I was to take baking treatments at Section A dispensary. . . . I continued them once and twice a day up to and including December 7th; reported for work on December 8th, and did not get a place until August 20th. Since then I have been getting massage treatment;" that prior to the date of this accident there was nothing the matter with his hand or arm. He could do anything with it, and, since the accident, with the exception of the treatments, nothing was done to his arm which would cause his present condition.

On cross-examination, claimant said that he had seen Dr. Hicks, through the defendant, who said "no doubt it possibly came as the result of this injury, but that he could not determine just where the nerve or muscle was."

The referee said "that, taken as a whole, the medical testimony is negative, but that Dr. Houselton testified that there has been the loss or paralysis of the motor function of the arm, and it is the opinion of this doctor that it was the result of the injury."

The testimony of Dr. Houselton does not justify this conclusion. He stated that he looked at the arm and found that it did not have much power in it; that there seemed to be a paralysis of the muscle fibres. I noticed the atrophy, and that showed that he was losing naturally and slowly, if it was the result of the injury, the loss of his arm." The doctor also said that "he has an atrophied condition which has resulted from the loss of function." He does not, however, state that the loss of function or that the atrophied

condition of the arm had any relation to, or was the natural and probable or direct or superinduced result of, or most probably came from, the injury to the fingers: Vorbnoff v. Mesta Machine Co., 286 Pa. 199; Anderson v. Baxter, 285 Pa.. 443; Bruggeman v. York, 254 Pa. 430.

Dr. Potts testified: "During the non-use of that arm he may have contracted a condition which any of us might do by simply not using it—atrophy." But he does not say that, in his professional opinion, this condition was directly or indirectly caused by the finger injury. He asserts his belief to be to the contrary, and that claimant's condition is due to a disease of the spinal cord. He also said if claimant had a blow across the shoulders and head (there is evidence that he had), if these symptoms appeared shortly after that, it might be due to such injury. This is not enough. The professional opinion must be given that the result in question most probably came from the injury to the fingers: Funk v. Sheldon Axle Co., 270 Pa. 476; Vorbnoff v. Mesta Machine Co., 286 Pa. 199; Whelen v. Eastern Dock Co., 80 Pa. Superior Ct. 154.

For the same reason, the testimony of the claimant is not sufficient that Dr. Hicks said "that the reason he wanted the X-ray was to see whether there was any nerve or ligament or bone or muscle injury to cause this. He said, no doubt, it possibly came as the result of the injury, but that he could not determine just where the nerve or muscle was," nor is the letter of Dr. Houselton, that the claimant has a motor paralysis of the left arm following his accident in May, 1923. He does not state that, in his professional opinion, the paralysis was most probably caused by the accident to the fingers, nor does the report of Dr. Hicks reach the question here involved, nor the testimony of Dr. Casselbury, wherein he stated: "Q. So that the non-use of the hand was due to the accident? A. Yes, sir. Q. So that if the paralysis was not caused by the injury, the injury caused the non-use of the hand and the non-use was the cause of the paralysis? A. Yes, if the paralysis was caused by that; only his fingers were hurt; that paralysis would be overcome by use and massage." The doctor also states that if the atrophy was caused by non-use of the arm, it ought to be relieved by treatment. If not, it may be due to some organic lesion in the spinal cord.

The referee also states (without making any specific finding of a fact) that "the defendant sought to show that claimant had been affected by syphilis, as shown by tests taken; this may be the explanation, and the blow may have lighted up a pre-existing latent condition."

There is no evidence in the case that the blow either on the fingers or on the head had anything to do with aggravating a latent systemic condition in the claimant and in causing the loss of the arm: Kelly v. Watson Coal Co., 272 Pa. 39; Smith v. Primrose Tapestry Co., 285 Pa. 145; Saroka v. Phila. & Read. C. & I. Co., 87 Pa. Superior Ct. 503; Bakunas v. Phila. & Read. Coal Co., 78 Pa. Superior Ct. 175; Davis v. Davis, 80 Pa. Superior Ct. 343.

The law is well established that where the injuries complained of are immediately and directly, or are naturally and probably, the result of the proven accident, the conclusion, without medical testimony, may be safely drawn: Davis v. Davis, 80 Pa. Superior Ct. 343; Grobouskie v. Shipman Koal Co., 80 Pa. Superior Ct. 349. The difficulty is in applying it.

The disability following closely upon the injury is evidence to be considered with other evidence in the case, but, in itself, is not enough to show that the result in question most probably came from the injury proved: Miller v. Railroad Co., 270 Pa. 330; Roach v. Oswald Lever Co., 274 Pa. 139; Watson v. Coal Co., 273 Pa. 251.

How it may properly be inferred that the claimant lost the use of his arm as a result of an injury without infection to his fingers because of the short time which elapsed between their occurrences, and because claimant was well before, and nothing was done to his arm since the accident to cause his present condition, is a little difficult, and is made more difficult when all the doctors in the case refuse to draw such a conclusion.

We conclude that there is no evidence to sustain the finding that the claimant permanently lost the use of his left arm as a result of the injury to his hand on June 8, 1923, in the course of his employment.

The first, second, third and fourth exceptions to the findings of fact and the first and third reasons, alleged as errors of law, are sustained and the findings to which these objections are aimed are reversed.

Inasmuch, however, as an analysis of the testimony is required to ascertain if there is any evidence to sustain the findings of fact in controversy, that the injury to the claimant was the cause of his permanently impaired physical condition, the record is remitted to the Compensation Board for further hearing and determination: Vorbnoff v. Mesta Machine Co., 286 Pa. 199.

From William R. Toal, Media, Pa.